## In re ASSESSMENT OF TAXES, HAWAIIAN SUGAR COMPANY, LIMITED.

APPEAL FROM TAX APPEAL COURT, FOURTH DIVISION.

SUBMITTED OCTOBER 17, 1904.   DECIDED NOVEMBER 7, 1904.

FREAR, C.J., AND CIRCUIT JUDGES DE BOLT AND GEAR IN PLACE OF HARTWELL AND HATCH, JJ.

An assessment, made by the assessor and sustained by the tax appeal court, of the lessors' interest in certain land at more than the amount of eight years' rental, is affirmed under the circumstances set forth in the opinion.

OPINION OF THE COURT BY FREAR, C.J.

This is an appeal from the tax appeal court, fourth division, sustaining, on appeal from the tax assessor, an assessment of $400,000, made as of January 1, 1903, upon the lessors' interest in 3,933 acres of cane land held by the appellant, the Hawaiian Sugar Company, Limited, under a lease for fifty years, beginning January 1, 1889, the lessee being obliged by the terms of the lease to pay all taxes on the demised premises. The question whether the assessment was properly made against the lessee, instead of against the lessors, is not raised, and perhaps could not be raised, under the circumstances, at the present time. *Hilo Sugar Company v. Tucker,* 8 Haw. 148. The company returned the land at $300,000 and appealed to the tax appeal court as to all over that amount, namely, $100,000, but afterwards abandoned its appeal as to $30,000, and the question now is as to the remaining $70,000. The land had been

assessed at $400,000 and the assessment had been accepted by the company for a number of years previously, except that in 1902 the assessment was reduced, as the result of a compromise, to $300,000.

The appellant's present counsel come into the case for the first time in this court. They rely in part upon the rule, prescribed in C. L., Sec. 820, that the assessment value in cases of this kind should be "eight years' rental" unless that would be "manifestly unfair or unjust," and contend that at most the assessment should be no greater than eight years' rental and that it should be less on the ground that that amount would be manifestly unfair or unjust. The rent of the land in question consists of percentages of the sugar produced on it, varying according to the amount of sugar produced, and for the previous five years had average in value $42,500 a year. This rental would require an assessment of $340,000, if the eight year rule should be applied. Appellant's counsel, in their original brief, contend that the valuation of the lessors' interest should be no greater in proportion to their income from the land than the company's invested capital plus the value of the land and the annual expenses is as compared with the profits from its business, and they estimate the value of the lessors' interest on that basis at $302,357.72; but in their supplementary brief they point out an error in their estimate, the correction of which would make the valuation $374,800. They contend, however, that the valuation of the lessors' interest should be less than that of the company's property in proportion to income, for the reason that the lessors' income is derived from "naked land, unimproved (save as by the lessee) without a cent of value added, without an iota of risk in production of income, without a cent of expenditure, or a moment of labor or attention to make the enterprise pay," while the company obtains its profit only by the expenditure of a large amount of capital and thought and energy and the incurrence of much risk. It seems to us that these considerations weigh in the opposite direction. The fact that the lessors obtain their income simply as rent for the

land, without expenditure, labor or risk, is an element that adds
to the value of their interest in the land. In such case a given
amount of income would be a fair return upon a larger valua-
tion than where such expenditure, labor and risk are involved.
However, a comparison between the income of a sugar planta-
tion and the rent of a tract of land is of little if any assistance
in determining the value of the lessors' interest in the land.

The evidence as a whole in this case is not very complete or
satisfactory, but it tends to support the finding of the tax appeal
court, or at least does not clearly show that that finding was
erroneous. The decision of that court should not be disturbed
unless good reason appears for doing so. The evidence shows
that the land in question has an area of nearly 4,000 acres, and
that it is the finest cane land, and is supplied with water from
mountain streams. There is evidence that some years ago,
when the method of assessing sugar plantations was different
from that at present required by the statute, cane land was
assessed at from $100 to $300 an acre. If the lessors' fee sim-
ple interest, subject only to the lease, should be valued at the
rate of $100 an acre, the valuation would be $400,000. The
evidence shows also that the lessors' income averaged $42,500
net a year, the lessee paying the taxes. This would be 10⅝ per
cent. net on $400,000. The lease was made some years ago,
when conditions differed greatly from what they are now. The
land has been somewhat improved by the lessee, and the sugar
company which holds it is one of unusual prosperity. There is
much reason to believe that an investment of $400,000 in the
purchase of the lessors' interest would be one of unusual secur-
ity.

After the case came to this court, a deposition of one of the
witnesses before the tax appeal court was taken and filed as
new evidence by consent of the court and counsel on both sides.
The appellant contends that this materially changes the evi-
dence upon which the tax appeal court based its opinion,—
principally because the witness says that when he replied in the
affirmative in the lower court to the question whether he would

advise the lessee to purchase the land at $400,000, in case the lessors should offer it at that figure, he meant to include certain other land, which appears to have an area of 800 acres, which he supposed was included in the land in question, but which it is claimed was returned and assessed separately as pasture land. At just what amount that land was returned and assessed does not appear, but if it was assessed as pasture land, it was probably at such a small amount as would not make a great difference in this case if it should be deducted from the $400,000. The case would be altered materially only in case that land should be considered, as perhaps it should be, as available for cane and about to be utilized by the lessee for that purpose. But, however that may be, the witness did not say in the lower court that $400,000 was all that the land that he had in mind was worth, nor did he say in his deposition that the land now in question was not worth $400,000. On the contrary, when the question of the value of the land was put to him in the lower court by the appellant's counsel he did not reply, and the question was not pressed.

Another point urged by appellant's counsel is set forth in their supplementary brief, to the effect that since preparing their original brief they have discovered from an examination of the papers in the case that the appellant returned this land twice, namely, once under Schedule A, real property, $300,000, and once under Schedule C, lessee's return of property leased, land $300,000, improvements $318,620.42. It is contended that this occurred through an oversight, and that the lessee has already paid its taxes on the $300,000 returned under one of these schedules, and that if it is now required to pay the taxes on the other $300,000 it would be paying in all on $600,000, or $200,000 more than was fixed by the tax appeal court, and that consequently it should not be required to pay on an additional $100,000. In support of this view reliance is placed upon the decision in *Hilo Sugar Co. v. Tucker, supra,* where the court held that the lessee could not properly be assessed on its interest, which it had not returned, after having

returned and been assessed upon the entire property as includ-
ing both lessor's and lessee's interest, that is, as if there had
been no lease. Such is not the case here. There is nothing to
show that the $300,000 returned or the $400,000 assessed on
the land was considered as including the lessee's interest. On
the contrary, there are strong indications that it was considered
as covering only the lessors' interest. For instance, the assess-
ment was determined largely with reference to the income
derived by the lessors alone, and the questions in regard to the
value of the land were put with reference to the amount that
the lessee would pay for it if it were offered by the lessors, and
of course the lessee would not purchase what it already had, its
own interest. Moreover, it does not appear upon what the lessee
has already paid taxes. The fact that it returned, as was
proper under the statute, the lessors' and lessee's interests sep-
arately, under the appropriate schedules, and repeated both
amounts in the summary in its return, and that no suggestion
was made by it or its counsel in the lower court that it had made
a mistake, coupled with the fact that it actually paid the taxes
on one of these items, would seem to indicate that it knew what
it was about and intended to do what it did do. Moreover, the
return shows that it at first valued the improvements at
$618,620.42 instead of $318,620.42, and then changed the
amount to the latter sum in both Schedule C and the summary,
thus lending color to the appellee's contention, which has some
support also from the appellant's statements in its annual
report, that the $300,000 mentioned as the value of the lessee's
interest in Schedule C was really the value of some of the
improvements placed upon the land by the lessee. At any rate,
the change in the figures would seem to show that the lessee's
attention was brought to the matter, and that the figures finally
inserted were inserted only after reflection. There is not
enough before us now to enable us to hold that a mistake was
made. There is not enough to show what the value of the
lessee's interest was. We need not say whether if a mistake

were made we could now, at this stage of the case and in this proceeding, afford the desired relief.

It is suggested by counsel in their brief that if we cannot afford such relief now, we withhold the decision in the case until further opportunity may be had by both parties to fully present and argue the case on the new issue, and that if such a rehearing should be given, they would undertake to show that a mistake had been made in making up the return. We do not feel that we should do this under the circumstances. It is a suggestion to practically open the case and hear it in the appellate court as if this court were one of original jurisdiction, merely because of what is suggested, without the support of affidavits of facts, as a mistake of appellant itself which, if there was such a mistake, ought to have been discovered and brought to the attention of the tax appeal court, or at least to the attention of this court before the case was submitted by consent of the court a second time upon supplementary briefs after it had already been submitted on the original briefs.

The decision of the tax appeal court is affirmed.

*Smith & Lewis* and *L. J. Warren* for appellant.

*W. S. Fleming,* Assistant Attorney General, for appellee.