IN RE ASSESSMENT OF TAXES OF EWA PLANTA-
TION COMPANY, LIMITED, APPEAL BY THE
ASSESSOR FROM TAX APPEAL COURT, FIRST
TAXATION DIVISION.

ARGUED MARCH 13, 1905.　　　　DECIDED MARCH 27, 1905.

FREAR, C.J., HARTWELL, J., AND CIRCUIT JUDGE DE BOLT IN
PLACE OF WILDER, J.

VALUATION OF SUGAR PLANTATION.

> After considering the elements of value shown by the amount of
> sugar product during the previous four years, its cost and net
> returns and ordinary expense of keeping machinery and mill in
> order, five million dollars held to be an appropriate valuation for
> purposes of taxation.

Statement of the case: The property of the Ewa Plantation
Company, Limited, was returned at $4,000,000, assessed at
$5,448,000 and valued by the tax appeal court at $4,400,000,
from which valuation the assessor appealed. The tax appeal
court valued the property by taking the selling price of its
stock (250,000 shares at $20), and deducting 20 per cent., as
was done in the case of the *Rapid Transit & Land Co.* approved
in 15 Haw. 3, adding outstanding bonds for $400,000. The
court in the case cited said: "The evidence fails to show that
the valuation of the property by the tax appeal court was ex-
cessive or more than the full cash calue thereof at the date
of the assessment and the same is therefore affirmed." The
attorney of the tax-payer in the present case submits that there
is "no reason why the rule" (of twenty per cent. deduction from
the market value of stock) "if applicable to the Honolulu

Rapid Transit & Land Company is not applicable to the Ewa Plantation Company." The brief of the tax-payer's attorney before the tax appeal court uses, however, the following language: "The attention of the members of the board of tax appeals is earnestly requested to the difference between an approval by the supreme court of this Territory of a method of ascertaining values used by the assessor, and a decision that such method is the only way to arrive at values. The former is what the court has done. It could not have done otherwise. If it had decided that such method was exclusive, the decision would have been useless for it is not the law as laid down in section 820 of the Civil Laws, and the legislature and not the court makes the law. The court decides indefinite and uncertain points in the law."

It appears that the net profits of the plantation for 1903 were $758,519, of which sum only $300,000 were paid out in dividends, the remainder having been used in erecting a mill and in various improvements on the plantation to keep up its earning capacity. According to the valuation by A. V. Gear in behalf of the assessor, the average profits for the previous four years were $714,562, and $70,000 written off from the capital added thereto would raise this sum to $784,562, which is 14—77-100 per cent of $5,311,861.88. The profit for 1903, $758,519, added to $70,000 written off from the capital would make $828,519.11, being 14—77-100 per cent. of $5,609.472.

The evidence of the plantation manager, Mr. Renton, is that the average yield had been 9 1-2 to 9 2-4 tons per acre as a whole and that the cost of production was "somewhere about $35" per ton or "$35 to $37.50," and that the additional cost of marketing the sugar would be "not more than $15." He further testified that "on a large plantation like Ewa to replace and fix machinery that has been disabled would take about $100,000 a year." Mr. Spalding, of Spreckels & Company's bank, testified in behalf of the tax-payer as follows: "Ewa on the average has had exceptional crops for the past few years and notwithstanding that she has not been able to

pay over six per cent. dividends. It is true that it has reduced its floating indebtedness somewhat but crops have been exceptional and I don't think that a person buying the plantation would regard previous crops as a safe basis for future. expectations. Ewa is a large plantation and has been a large dividend earner but it is not to be expected that Ewa will always continue as such. Take the case of Pahala, that was considered a good investment; stock sold as high as 275 readily, but the leaf hopper ravages have been tremendous the past year and, although there has been a good, high price for sugar temporarily, yet this does not necessarily mean a permanent high figure. Nevertheless I consider island securities good. Ewa stock is selling at twenty but the value of the stock on the market does not always represent the value of the property. There is a speculative feature about buying stock that raises it beyond the fair earning value of the property. I have had a great many experiences of that kind. I don't think that the fact that Ewa stock is selling at twenty, at par, would indicate that a purchaser of the plantation would buy it on that basis but at considerably less than that. The plantation would bring at par on all the stock $5,000,000, but if one were to buy it he would have to take into consideration the future and if Ewa continues to earn six per cent. and there are good chances of her continuing to do so for the next ten years, it would be doing very well on that basis. I would not put the value of the property over four million dollars. I should think that any purchaser putting up that amount of money would not be willing to invest his money at a lower rate than seven per cent. The stock is only paying six per cent. He should. have at least seven per cent., in fact—in fact my own opinion is that a person should have ten per cent. on a sugar investment, considering all the chances and even on a seven per cent. basis—I would amend that—I think a person should expect eight per cent. This would mean about $4,000,000 capitalization on $300,000 net profit." On cross-examination Mr. Spalding said he considered "in sugar properties profits earned but

needed to maintain the plantation upon a dividend earning basis are valueless so far as the direct earning power is con- cerned." In answer to the question on cross-examination, "Your best experience shows that where there are net profits of $760,000 a year, that the corporation is not earning over seven or eight per cent. ?" the witness answered, "I think if the property were put on the market the value would be deter- mined upon its prospective earning power rather than what it had done in the past." The same witness further testified as to the taxable value of the plantation, "Although they may have $921,000 in as a surplus, I don't think it is a taxable asset. As I understand it, the surplus goes entirely into the plantation to keep the plantation property on a dividend pay- ing basis. If the money had been invested in outside securities then it might have been tangible for taxation purposes but, as I understand it, it is simply an account from which money is drawn to keep the plantation up to its present earning power. Nine hundred and twenty-one thousand dollars has been put back into the plantation in mills and railroad and other im- provements in order that the earning power may not decrease. It is my opinion that Ewa has about reached her limit of de- velopment and that while it is carried as a surplus it will have to be put back into the plantation."

It appears from the tax-payer's return that its crop for the year 1903 was 33,214 tons. The assessor in valuing the prop- erty at $5,448,000 says that he took the average net profits of the previous four years, amounting to $761,723, and capital- ized that at 12 1-2 per cent. with the result of $6,093,784, from which he deducted fifteen per cent. or $914,067.67, leav- ing a balance of $5,179,716.40, to which he added the value of the bonds held by the tax-payer, $400,000, making a total of $5,579,716.40; that the board of equalization considered the standing, earnings, price of sugar January 1, 1904, prob- able unforseen losses in crop, etc., and everything bearing on value of the plantation and finally agreed to assess the planta- tion at $5,448,000, being the same assessment as in 1903.

Per curiam: It is impossible to lay down definite rules for valuing a sugar plantation. Possibilities of disasters and losses, low prices and increase of cost of production enter into the estimate of values of such properties, and when those things occur the values are reduced accordingly. After careful examination of the somewhat diverse methods of valuing the property which are shown by the records in this case, and upon full consideration of the elements of value shown by the amount of sugar produced in the previous four years, its cost and net returns, as well as the manager's evidence of the ordinary expense of keeping the plantation machinery and mill in order, we regard $5,000,000 as an appropriate value to place upon the property for purposes of taxation.

The decision of the tax appeal court is modified accordingly.

*A. G. M. Robertson* for assessor.

*Castle & Withington* for tax-payer.