## IN RE TAXES WAIAKEA MILL COMPANY.

### No. 1065.

APPEAL FROM TAX APPEAL COURT, FOURTH CIRCUIT.

ARGUED APRIL 30, MAY 1, 1918.                    DECIDED MAY 15, 1918.

COKE, C. J., QUARLES AND KEMP, JJ.

TAXATION—*valuation—enterprise for profit.*

> The value of property combined in an enterprise for profit is not less than the aggregate value of the separate items making up the whole unless the value of the items has been depreciated by reason of their combination.

SAME—*same—mature crop of cane.*

> The value of a mature crop of cane for taxation purposes is the amount the sugar it will produce would bring when harvested considering the price of sugar on January 1 of that year less the cost of harvesting, marketing, etc., and of necessity this value can only be approximated.

SAME—*judgment of tax appeal court—consideration to be given such judgments.*

> The valuation fixed by the tax appeal court should not be disturbed unless good reason appears therefor.

OPINION OF THE COURT BY KEMP, J.

This is an appeal by the Waiakea Mill Company from the decision and judgment of the tax appeal court for the fourth judicial circuit sustaining the assessment of the company's property at a valuation as of January 1, 1917, in the sum of $1,250,000.

The company returned its property for taxation as an enterprise for profit at the sum of $800,000; it was assessed at $1,250,000, and on appeal to the tax appeal court the assessment was sustained.

At the hearing before the tax appeal court it was agreed

that the values placed by the taxpayer on the various items
of its tangible assets were correct, except the valuations
placed by it upon (a) its 1917 growing cane, (b) its 1918
growing cane and (c) its fee simple holding of forty acres
constituting its mill site.

The values upon which the assessor and the taxpayer
have agreed aggregate the sum of $350,060. In arriving at
the total value of the tangible property owned by the tax-
payer it is therefore only necessary to ascertain the value
of the two crops of cane and the mill site, which, added to
the agreed values, will be the total value of the taxpayer's
tangible property.

The 1917 crop of cane was returned by the taxpayer at
$234,496.14 but is now admitted to have been worth $429,-
230. The assessor placed a value of $937,500, on this crop.
The tax appeal court arrived at a value of $595,320.

The 1918 crop of cane was returned by the taxpayer at
$159,083. The assessor placed its value at $457,500, while
the tax appeal court found its value to be one-half the value
of the 1917 crop, or $297,660.

The taxpayer returned its mill site consisting of forty
acres owned in fee simple at $10,000. The assessor placed
its value at $40,000 and the assessment was sustained by
the tax appeal court.

The total value of the tangible assets of the taxpayer, as
shown by the figures above detailed, partly agreed upon
and partly found by the tax appeal court to be the correct
valuation of the separate items making up the whole, is the
sum of $1,283,040.

In response to a request of counsel for the taxpayer the
tax appeal court has sent up as part of the record on ap-
peal an analysis of the methods used by it in arriving at a
valuation of the enterprise involved in this case. Counsel
has criticized these methods, but we are not so much con-
cerned with methods as we are with results. If the value

arrived·at by the use of the alleged erroneous methods is sustained by the evidence the court's finding should not be disturbed.

If then the tax appeal court was justified by the evidence in its conclusions as to the value .of the items in dispute the value fixed by the assessor on the property as a going concern or an enterprise for profit and sustained by the tax appeal court is $33,040 less than the total value of the separate items making up the whole. The value of the whole would not be less than the sum of its parts unless the value of the parts was depreciated by reason of their combination (*In re Taxes Union Mill Co.*, 23 Haw. 46 at 50).

It then becomes necessary for us to examine the evidence for the purpose of determining two questions, viz., (a) Are the three disputed items of tangible assets of the value found by the tax appeal court; and (b) As an enterprise for profit is the value of the whole depreciated by reason of the combination of the parts and if so to what extent?

Mr. Williams, the secretary of Waiakea Mill Company, the taxpayer, has testified that the price his company paid for cane grown by others and sold to it in 1916 was $4.25 per ton at the mill and that it cost sixty-one cents per ton to harvest and deliver it, thus the price net to the grower was $3.64 per ton of cane. The company's estimate for the 1917 crop was 121,000 tons of cane. He further testified that his company purchases about 90% of the cane milled by it and that a sliding scale of prices is maintained by it based on the price of sugar prevailing on the date of the purchase. If this mill owner allows the price of sugar to determine the price it will pay for cane from other growers why should not the assessor and the courts consider the price of sugar in arriving at the valuation for taxation purposes to be placed on a mature crop of cane standing in the field?

The fact that the mill owner (in this case also the taxpayer) would pay only $4.25 per ton for cane delivered at its mill by other growers, especially when it is not shown what the conditions of the contracts with the growers are, should not be taken as establishing the market value of cane.

It is to be inferred from the return of the taxpayer in this case that at least a portion of the cane purchased by it is grown by its sub-lessees on the lands leased by it from the government (there being a list of some thirty sub-lessees attached to the return) and the terms on which this cane is grown and sold to the company have not been shown further than is shown by the testimony of Mr. Williams to which we have referred.

We think the value of a mature crop of cane ready for the harvest is the amount the sugar it will produce would bring when harvested, considering the price of sugar on January 1 of that year, less the cost of harvesting and marketing, etc. Of course neither the taxpayer nor the assessor can know absolutely what the cane is worth to the taxpayer while it is still standing in the field and of necessity must be approximated.

From the evidence in this case given by the tax assessor it appears that the cost of harvesting, milling, insurance, freight, weighing, commissions and incidental expenses of marketing in 1916 amounted to $21.90 per ton of sugar. To this amount the assessor added 25% to cover increased cost, making the cost per ton of sugar (not including of course the cost of bringing the crop to maturity) amount to $27.375. After the assessor had testified in detail as to these costs Mr. Williams was called in rebuttal and disputed one item of expense which entered into the assessor's calculation. He did not question the other items. The assessor allowed approximately $8 per ton of sugar for freight, weighing, insurance and incidentals, while Mr.

Williams estimated those items at $13.  The assessor then testified that on January 1, 1917, sugar was worth $105.40 per ton, while Mr. Williams placed it at $101.60; that he deducted $27.375 from the value of a ton of sugar leaving a net of $78.  He then allowed a further deduction from this amount of $18 to cover all contingencies leaving a net return of $60 to the plantation for every ton of sugar its cane would produce.  14,000 tons of sugar is the least estimate placed on the 1917 crop by any of the witnesses.  The assessor testified that the plantation manager's estimate was 15,000 tons.  From these calculations by the assessor it is clear that the crop standing in the field, using the least estimate of tonnage, was worth to the company $840,-000, whereas the tax appeal court has placed a valuation of only $595,320 upon it.

As to the 1918 crop of cane the taxpayer contends that the amount spent upon it is the only fair valuation to be placed thereon while the assessor and the tax appeal court have regarded it as of one-half the value of the mature crop.  From the evidence it is clear that this crop had no market value at the time of the assessment.  It could not be then harvested and converted into sugar as it contained none.  The taxpayer contends that if the theory of the assessor is correct the crop was only one-third and not one-half matured.  But the evidence clearly shows that it was one-half as far advanced as the 1917 crop, the evidence being that the planting of the 1917 crop began in the early part of 1915 and extended over a period of several months of that year, while the planting of the 1918 crop began a year later and extended over a like period. The evidence shows that more than half as much had been expended on the 1918 crop as had been expended on the 1917 crop, Mr. Williams having testified that there had been expended on the 1917 crop the sum of $234,496.14, while on the 1918 crop there had been expended the sum

of $159,083. The taxpayer contends that as the younger crop contains no sugar and is liable to many risks, such as drought, excessive rainfall, insects, bugs and leaf-hoppers, that therefore the amount expended on it is the only thing proper to be considered in estimating its value. As said by the court in the case of *Tax Assessment Ewa Plantation Co.,* 16 Haw. 555, 559: "It is impossible to lay down definite rules for valuing a sugar plantation. Possibilities of disasters and losses, low prices and increased cost of production enter into the estimate of values of such properties, and when those things occur the values are reduced accordingly." See also *Re Taxes Hawi M. & P. Co.,* 23 Haw. 46, where the court said: "The further argument of counsel for the appellant refers to the fact that since the last appeal was decided legislation has reduced the duty on raw sugar and provided for its abolition on May 1, 1916. This is a matter which affects the sugar properties throughout the Territory, but just what result the admission of sugar duty free will have upon the taxable value of sugar plantations can better be determined after the happening of the event."

While the court in each of the cases quoted was discussing the valuation of a plantation as an enterprise for profit, we think what it said applies in the valuation of a crop of growing cane and that too much prominence should not be given to forebodings of disasters which may befall the growing crop but rather await the happening of the event when it can be taken into consideration in fixing future values.

We are not prepared to say that it was improper to consider the relative age of the two crops in estimating the value of the 1918 crop, or that the value thus ascertained is not correct.

The evidence as to the value of the forty acres of land constituting the mill site is conflicting. Two witnesses

have sworn that it is, in their opinion, worth $40,000, the value placed upon it by the assessor and the tax appeal court, while two other witnesses have sworn that, in their opinion, it is worth not more than $10,000. The tax appeal court was justified by the evidence in finding as it did that it was worth $40,000 and its finding should not be disturbed.

Viewing then the property combined as an enterprise for profit what does the evidence show? The average profits per annum for the period of six years (1911 to 1916 inclusive), as shown by the evidence, have been, in round numbers, $436,000. The average profits per annum for the period of four years (1913 to 1916 inclusive) have been, in round numbers, $450,000. While the income which a property will produce is not the only thing to be considered in estimating its value as an enterprise for profit as said by the court in *Tax Assessment Appeals*, 11 Haw. 235 at 238, this "is one of the most potent factors in determining its value." If we should capitalize these profits at 10% we would get a valuation of from $4,360,000 to $4,500,000. Or taking the very liberal figure of 15% as the basis of capitalization we would arrive at a valuation of from $2,900,000 to $3,000,000. A capitalization of $436,000 profits at approximately 35% would show a value equal to that fixed by the assessor and the tax appeal court. But Mr. Williams has submitted an estimate which it is insisted shows that, as an enterprise for profit, $800,000 is a fair valuation of the property under consideration. However, comparing his estimate with other figures submitted by him we are forced to the conclusion that his estimate is not reliable. He says that a purchaser of the properties at $800,000 would be compelled to make an additional outlay of $2,000,000, making a total investment of $2,800,000. He then says that he would expect to harvest 30,000 tons of sugar from the two remaining crops

which were to mature before the expiration of the lease, for which he would expect a gross return of $3,000,000, thus leaving only $200,000 to cover contingent expenses. He has not told us why it would be necessary to make an additional expenditure of $2,000,000, but from other figures submitted by him and the assessor it is easily demonstrated that no such expenditure would in fact be necessary. It must be borne in mind that the 1917 crop, already mature on the land, had only to be harvested, milled and marketed. The outside figure necessary for these items, as shown by the evidence, is $30 per ton. 15,000 tons at $30 would be $450,000. The 1918 crop was already well advanced and assuming that it would be brought to maturity for the same outlay of capital as the 1917 crop only $75,000 additional capital would be necessary for that purpose. Then allow them the same amount for harvesting, milling and marketing the 1918 crop and we would have, including the purchase price of $800,000, a total outlay of $1,775,000, for which Mr. Williams would expect a gross return of $3,000,000, without taking account of the tangible assets which are admitted to be worth $360,000, and counting nothing for such crop as may be taken from the land in 1919 up to June 1 of that year when the lessee must be off the land. It is apparent from the figures submitted by the witnesses that the item of $2,000,000 expense necessary to realize the benefit of the crops on the land has been greatly exaggerated, and that notwithstanding the fact that the lease held by the taxpayer from the government is soon to expire, the estimate of $800,000 is far too low. In fact we cannot conceive of a more liberal treatment of an enterprise than has been accorded the one involved in this case.

The assessor was extremely liberal in his reductions as was the tax appeal court on account of the short term of the lease.

The evidence as a whole tends to support the finding of the tax appeal court. The decision of that court should not be disturbed unless good reason appears for doing so (*In re Taxes Haw. Sugar Co.,* 16 Haw. 236, 238).

Judgment affirmed.

*W. L. Stanley* for the taxpayer.

*A. G. Smith,* Attorney General (*C. S. Franklin,* Deputy Attorney General, on the brief), for the assessor.