GREENLEE *v.* DAVIS and Another.

The word "ancestor," in section 114, p. 436, R. S. 1843, must be construed to embrace all persons from whom a title by descent could be derived, under any circumstances; that is, to be synonymous with *kindred*.

APPEAL from the *Tippecanoe* Circuit Court.

DAVISON, J.—The appellant, who was the plaintiff, sued *Davis* and *Cassman*, for the partition of real estate. Demurrer to the complaint sustained, and final judgment for the defendants.

The following are conceded to be the facts of the case, as alleged in the complaint:

On the 16th day of June, 1827, one *Abraham Burnett* made his will, by which he devised to his nephew, *Richard Davis*, a section of land, known as Section No. 6, in the *Burnett* reservation at the mouth of the *Tippecanoe* river, in *Tippecanoe* county, *Indiana*. By this will the said *Richard Davis* became the owner, in fee simple, on the death of his uncle, the said *Abraham Burnett*, which occurred shortly after the execution of his will, and prior to the 12th day

of May, 1828. *Richard Davis* was the son of one *John H. Davis* and his wife, who was *Nancy Davis*, a sister of *Abraham Burnett*. *Nancy Davis* survived her brother, and, after his death, had issue, by her said husband, *William B. Davis*. Prior to the marriage of *John H. Davis* to the said *Nancy*, he had issue a son, *John H. Davis*, by a former marriage. *Nancy Davis* died some time after her brother *Abraham*, leaving, her surviving, her two sons, the said *Richard* and *William B. Davis*; and, in the year 1847, the said *Richard* died, intestate, seized of said section of land in fee, and left, him surviving, as his only heirs at law, the said *William B. Davis*, his brother of whole blood, and the said *John H. Davis*, the brother of the half blood. Sometime in May, 1857, the said half-brother, *John H. Davis*, made his will, and shortly afterward, prior to June 10, 1857, died. His will was duly proven; and, by its provision, after devising some fifty acres of said Section No. 6 to *Jaorigim Cassman*, he makes the appellant his residuary devisee as to that section and some other of his estate. The only title, if any, *John H. Davis* had in said Section No. 6, was derived by descent from his half-brother, *Richard Davis*; and if he had any inheritance in said section, it embraced the equal, undivided half of it, as co-heir with *William B. Davis*, *Richard's* brother of the whole blood. The facts above stated appear in the complaint, by which the appellant seeks to have partition of said section so as to set off to him, in severalty, the portion which, he, insists, belongs to him as the residuary devisee under *John H. Davis's* will.

The only question to settle is: Did *John H. Davis*, the half blood brother of *Richard Davis*, the intestate, inherit, as to the land devised by *Abraham Burnett*, equally with *William B. Davis*, *Richard's* brother of the whole blood? An act, in force when the intestate died, contains this provision: "Kindred of the half blood, and their descendants, shall inherit equally with those of the whole blood in equal

degree of consanguinity to the intestate, unless the inherit-
ance shall have come to the intestate by descent, devise, or,
gift, of some of his ancestors; in which case, such kindred
of the half blood, and their descendants, shall not inherit,
except they also be of the blood of such ancestor; but if,
in any such case, there be no relatives of the whole blood,
in equal or nearer degree of consanguinity to such intestate,
nor their descendants, entitled to take such inheritance,
then such kindred of the intestate, of the half blood, and
their descendants, shall take the same, as if they were of the
whole blood." R. S. 1843, p. 436, sec. 114.

Was *Abraham Burnett*, the devisor, the ancestor of his
nephew, *Richard Davis*, the intestate, within the meaning
of the term " ancestor," as used in the provision just recited?
If he was, *John H. Davis* did not inherit the land in ques-
tion from the intestate, because, in view of the facts alleged,
he was not " of the blood of such ancestor." It is, however,
argued that, as *Nancy Davis*, the sister of *Abraham Burnett*,
and mother of *Richard Davis*, was living at the time of
*Burnett's* death, *Richard* was not the heir of *Burnett*, could
not, therefore, have inherited any portion of his estate, and
not being such heir, *Burnett* was not his, *Richard's*, ances-
tor, because the word " ancestor," in the connection in which
it is used in the statute, is " the correlative of heir."
While, on the other hand, it is insisted that that word
should not be confined in its signification " to those from
whom the devisee, or donee, would have inherited, as heir,
under the circumstances as existing;" but that " it embraces
all from whom a title, by descent, could be derived under
any circumstances."

The latter position seems to be correct. The intent of
the statute must govern its construction; and, from the whole
enactment, it may be readily inferred that the legislature
did not mean to employ the word " ancestor " in its usually
defined meaning: but to use it as synonymous with kindred.

*Richard Davis* was of the blood of his uncle, *Abraham Burnett*, from whom he derived the estate by devise, and it is enough to meet the intention of the law-maker, if, in the absence of a nearer heir, he could have inherited the same estate. And, being thus of the blood of his uncle, from whom, in a given case he could have inherited, it follows, that *John H. Davis*, not being of the same blood, could not inherit the estate from *Richard*, his half-brother. *Brewster* v. *Benedict*, 14 Ohio, 368. This authority, though not directly in point, enunciates a principle which accords with the view we have taken. See, also, *Pricket* v. *Parker*, 23 Ohio, 394.

*Per Curiam.*—The judgment is affirmed, with costs.

*John Pettit*, *Samuel A. Huff*, *W. F. La Rue*, and *Behm and Taylor*, for the appellant.

*Robert Jones*, for the appellees.