*E. C. Peters* for defendants.

---

WILLIAM K. UUKU, A MINOR, BY HIS NEXT FRIEND, WILLIAM UUKU, *v.* ELIZABETH KAIO AND ROSE K. DESHA.

EXCEPTIONS FROM CIRCUIT COURT, FIFTH CIRCUIT.

ARGUED JUNE 23, 1911.                    DECIDED JULY 3, 1911.

ROBERTSON, C.J., PERRY AND DE BOLT, JJ.

TRIAL—*direction of verdict—conflicting evidence.*

> The evidence being sufficient to support a finding that P. was full brother of the intestate, it was error to direct a verdict based on the theory that the two were half brothers.

APPEAL AND ERROR—*grounds of affirmance—questions not raised below.*

While a judgment may, under some circumstances, be affirmed upon a ground other than that which influenced the trial court, the general rule is that an assumption of fact adopted by a trial court with the acquiescence of the parties will be followed by an appellate court to which the cause is taken; and such rule will be applied where the ground relied on in the appellate court to support a judgment otherwise erroneous involves a question of fact not fully developed at the trial to which the attention of neither the trial court nor opposing counsel was called.

DESCENT AND DISTRIBUTION—*"Ancestors," under* §2513, *R. L.*

The word "ancestor" in the proviso of section 2513, R. L., embraces all persons from whom a title by descent could be derived under any circumstances.

The ancestor from whom "the inheritance came" is the person from whom it *immediately* passed, and not the remote source of the gift.

ID.—*deed from wife—kindred of half blood not excluded.*

A., the wife of K., for a nominal consideration conveyed to M. certain land which M. thereupon conveyed to K., the intestate. M. and K. were not related to each other by blood or marriage. Held, that the alleged gift "came" to K. from M. and not from A. and that the children of P., a deceased half brother of K. and not of the blood of A., were not excluded by the provisions of section 2513, R. L., from inheriting the land of K.

OPINION OF THE COURT BY PERRY, J.

This is a statutory action to quiet title to certain parcels of land situate on the Island of Kauai. At the close of the plaintiff's case the defendants moved for a directed verdict and the motion was granted and the verdict accordingly rendered for the defendants. The exceptions are to the direction and to the verdict.

In limine the defendants moved to dismiss the bill of exceptions on two grounds. The first is that "it does not affirmatively appear by said bill of exceptions that the same was presented to or allowed by the judge trying the cause   *   *   *   within the time allowed by law   *   *   *   or any valid extension thereof." By a certificate endorsed by the trial judge, at the request of this court, on the bill of exceptions after the ar-

gument of this motion, it appears that the bill was presented for allowance on May 3, 1911. The order allowing it was made on May 4, 1911. The time for presenting the bill of exceptions to the judge, if there was any valid extension for that purpose, expired on, but included, May 3, 1911. The first ground is, therefore, untenable. The allowance admittedly may be on a day subsequent to the expiration of the time for presentation of the bill.

The second ground is, in substance, that the order granting the extension of time related merely to the filing of the bill and not to its presentation. Upon the court directing the jury to render a verdict for the defendants, counsel for the plaintiff said: "I desire to ask for thirty days after the receipt of the transcript to make and file a bill of exceptions," to which the court replied, "It is so ordered." Upon the return of the verdict and the denial of a motion for a new trial the court again allowed counsel's request, stated in these words: "I want to ask for thirty days after the receipt of a copy of the transcript within which to file a bill of exceptions." Defendants' point is that the time granted was merely for *filing* and not for *presenting* the bill of exceptions and that the two are distinct matters, citing *Ii Estate* v. *Mele,* 14 Haw. 311, and *Booth* v. *Schnack,* 19 Haw. 659. To construe the order of the circuit judge as relating strictly to a mere filing would be to impute to him the purpose to grant to plaintiff time within which to perform a nugatory act. Where the word "filing" requires a strict technical construction it would undoubtedly not be deemed to include a presentation, but under the circumstances of this case there can be no doubt that it was used as meaning and including the presentation as well as the filing. The motion to dismiss was for these reasons denied.

At the trial the parties stipulated that the following should be regarded as facts: "That the plaintiff and the defendants both claim an interest in the lands described in plaintiff's complaint under the same source of title, to-wit, as heirs of Isaac

H. Kahilina, deceased; that the defendants claim an interest in the lands described in plaintiff's complaint as the heirs of Isaac. H. Kahilina, deceased, by descent from said Isaac H. Kahilina; and that all of the lands described in plaintiff's complaint were at and before the death of Isaac H. Kahilina owned by him in fee simple." The plaintiff introduced evidence tending to show, inter alia, that the plaintiff's mother, Ana, now deceased, was one of five or six children of Paulo, that Paulo was the son of Kenoi (w) by her first husband, Kamahuula, and that Kenoi, by her second husband, Kahilina Sr., had three children, Isaac Kahilina, the intestate referred to in the stipulation of facts, Kaukaha (k) and Kapeka (w). At the defendants' request the plaintiff further admitted that "the property set forth and described in the complaint came to Kahilina" (meaning Isaac Kahilina) "from his wife, Ana Kini, by deed." The motion for a directed verdict was based on the ground that "the plaintiff is prohibited from receiving any part of the estate of Kahilina by virtue of Section 2513 and from what we see in the 9th Hawaiian, page 393," the case thus referred to being one to the effect that a son may be the "ancestor" of his father within the meaning of R. L., section 2513, and that a father, in such an instance, is considered to be "of the blood" of his son. As reported in the transcript accompanying the bill of exceptions, the presiding judge's ruling granting the motion shows clearly that it was based entirely on the theory that Paulo was a half brother of Isaac, and that, therefore, under section 2513, neither he nor his heirs could inherit in view of the fact that the title came to Isaac "from his wife Ana Kini by deed," Paulo not being of the blood of Ana Kini.

Polikapu, a witness, testified on direct examination that Isaac Kahilina had "an elder brother" and that his name was Paulo, and also "a sister" named Kapeka. On cross-examination the following questions and answers occurred: "Q. Don't you know as a matter of fact that Paulo was a son of Kenoi by her first

husband, Kamahuula? A. I have heard that. Q. In other words, that Paulo was a half brother instead of a full brother of Kahilina? A. That may be so. * * * Q. What did Kahilina tell you? A. He told me, 'This child, Paulo, has a different father.' * * * Q. And that is, in other words, that Paulo was a half brother of Isaac Kahilina? A. May be his half brother. Q. Well, isn't that what Kahilina told you? A. He didn't say in those words, but he told me that he had a different father. * * * Q. He told you that Paulo was a child of Kenoi and Kamahuula? A. That is what he told me." Another witness, Hana Scott, answering the question, "Do you know who Paulo's father was?" said, "Mohoula." On the other hand, in addition to the evidence above quoted, given by Polikapu in direct examination, from a third witness, Noa Kuiki, came the following testimony: "Q. Did you know a man by the name of Paulo? A. I do. Q. Do you know whether or not he was related to Kahilina? A. Isaac Kahilina himself told me that 'he is my brother.' Q. Do you know which was the elder of the two brothers—Paulo or Kaukaha? A. Kahilina told me Paulo was the oldest. Q. I will ask you if you ever had any conversation with Kahilina with reference to his immediate family in which he gave you the pedigree or the ages? A. Yes, I met Kahilina and we talked it over. Q. How did he mention it to you, the order that he gave you, of their ages? A. He told me it was Kaukaha, Paulo and also a sister. Q. And the sister's name? A. I don't know her name * * * (On cross-examination) Q. Who was Paulo's father? A. *Isaac told me Kahilina was his father.*" Kuiki's statement that Isaac told him that Kahilina was the father of Paulo was as definite as Polikapu's statement that Isaac had told him that Paulo was the child of Kamahuula, and as definite as Hana Scott's testimony that "Mohoula" was the father of Paulo. While the evidence as it stood was sufficient to support a finding that Paulo was a half brother of Isaac, it was also sufficient to support a finding that the two were full brothers. The issue of

fact, consisting largely of a question of credibility of witnesses, should have been left to the jury. It is clear that if Paulo was a full brother of Isaac, section 2513 could have no application.

It is urged, however, in support of the instruction and the verdict that no evidence whatever was adduced tending to show that Paulo died prior to the institution of this action. An examination of the record does, indeed, show that there was no such evidence, and also that there was no evidence tending to show that the parents of Isaac Kahilina and his wife, Ana Kini, died before Isaac and that Isaac left no issue surviving him—all facts indispensable to the vesting of title in the present plaintiff, the son of Ana, the daughter of Paulo.

This failure of evidence cannot now be taken advantage of by the defendants. The motion and the instruction proceeded on the assumption that the fact was, or at least that there was a sufficiency of evidence to show it, that Paulo and the parents of Ana Kini died before Isaac and that the latter left no children—in short, that Paulo inherited as heir of Isaac unless section 2513 forbade it. The point was not mentioned in the trial court. It would be unfair to the plaintiff to permit it to be presented for the first time in this court. Had it been advanced at the trial the defect could have been cured by the introduction of other evidence. It may well be in this case, as in *Makekau* v. *Kane,* 20 Haw. 203, 211, that the facts were all such as to vest the title in the plaintiff, that they could easily have been proven to be so, that the defendants were well aware of them and that the omission to make objection at the trial was due to such knowledge. The rule that a correct judgment is not to be set aside merely because an incorrect reason was given for it does not apply to the case under consideration. "A theory of a case or an assumption of fact adopted by the trial court with the acquiesence of the parties will be followed by an appellate court to which the cause is taken. * * * Appellate courts are especially careful to prevent injustice re-

sulting from affirmations of a judgment upon a ground not presented to the trial court and which might have been overturned by additional evidence had attention been directed to it. * * * The doctrine" (that a just judgment which is warranted by the record and the facts will not be overturned because it was based on the wrong reason) "is not applied where the ground relied upon in the appellate court to support a judgment, otherwise erroneous, involves a question of fact, not fully developed at the trial, to which the attention of neither the trial court or opposing counsel was called and where the upholding of the judgment would probably result in a miscarriage of justice." *Baker* v. *Kaiser,* 126 Fed. 317, 319, 320. "A party cannot sit by and acquiesce in the law stated by the presiding judge, making no objection to an erroneous assumption of fact, or to an omission to refer to certain facts, and speculate on the chance of a favorable verdict on another issue and then successfully move for a new trial founded upon the alleged errors in the charge or upon the assumption or omission just referred to. Such objections should be made while there is still time to correct the error either by a modification of the charge or by the allowance of further evidence." *Makelkau* v. *Kane,* supra. See also 2 Cyc. 660-662, 673, 675; *Peck* v. *Heurich,* 167 U. S. 624, 629; *Smith* v. *Spaulding,* 40 Neb. 339, 342; *Traction Co.* v. *Behr,* 59 N. J. L. 477, 479; *Bond Co.* v. *Wolfe,* 60 Pac. 637, 640.

The fact that there was evidence that Paulo was a full brother of Isaac of itself requires that a new trial should be granted. Since, however, the question of the effect of the deed of Ana Kini on the transmission of the title to the heirs of Paulo, if the latter was the half brother of Isaac, seems certain to arise upon a new trial, we shall pass upon it.

The witness Kuiki testified, "I was present when I saw the deed made out from Kahilina, from Kahilina's wife, deeded it over to Mika, and from Mika to Isaac." Aside from this statement and the admission that "the property set forth and

described in the complaint came to Kahilina from his wife,
Ana Kini, by deed," there is absolutely no evidence concern-
ing the execution or the terms of any conveyance, direct or in-
direct, from Ana Kini to her husband. The admission itself
is obviously inexact, for neither before nor since the act of
1888 (R. L., Ch. 146) could a married woman convey to her
husband. Perhaps the admission is to be regarded as meaning
that the wife so conveyed to the husband in the usual manner
by deed to a third party, the latter in turn conveying to the
husband. There was no evidence tending to show the consid-
eration for the deed, nor even that the conveyance related to
the land in controversy. We shall assume, however, in favor
of the defendants, as was assumed by the court and counsel at
the trial, that it related to the land in controversy, was for a
nominal consideration and was made with the assistance of
Mika. Nevertheless, the heirs of the half blood, not of the
blood of Ana Kini, would, in our opinion inherit.

Section 2513 reads as follows: "Kindred of the half blood.
The kindred of the half blood shall inherit equally with those
of the whole blood in the same degree; provided, however, that
where the inheritance came to the intestate by descent, devise
or gift of some one of his ancestors, all those who are not of
the blood of such ancestor shall be excluded from such inherit-
ance." The person from whom the inheritance, devise or gift
*immediately* came to the intestate, and not the remote source of
the gift, is the one referred to in the proviso in such statutes
as this. *Brower* v. *Hunt,* 18 Ohio St. 312, 313, 343; *Prickett*
v. *Parker,* 3 Ohio St. 395, 396, 397; *Nicholson* v. *Halsey,* 1
Johns. Ch. 417; *Patterson* v. *Lamson,* 45 Ohio St. 77, 86, 87;
*Estate of Ehu,* 9 Haw. 393, 394. Without deciding whether
gifts other than testamentary are within the contemplation of
the statute, Mika, and not the wife, is the person from whom
the alleged gift "came" in this instance. The law itself ren-
dered the wife incapable of making such a gift by deed to her
husband. It was for this reason that the deed was executed

to Mika. He could, but she could not, transfer the title to Isaac. Isaac received it from him and not from her.

Mika, under the assumed facts, was not an "ancestor" of Isaac. He was an utter stranger in blood and relationship, from whom Isaac could not under any circumstances have inherited. The word "ancestor" embraces all persons from whom a title by descent could be derived under any circumstances. *Greenlee* v. *Davis,* 19 Ind. 60, 62; 3 Washburn, Real Property, 18; *Prickett* v. *Parker,* supra; *Brewster* v. *Benedict,* 14 Ohio 368, 385, 386; *Estate of Ehu,* supra. Not all "gifts," irrespective of their source, are referred to in the proviso, but only those that come from "some one of his ancestors." The words last quoted are an essential part of the provision and must be given effect. The statute cannot be read as though they were not there. That Ana Kini conveyed to Mika and Mika in turn to Isaac did not, therefore, prevent the children of a brother of the half blood, not of the blood of Ana Kini, from inheriting from Isaac Kahilina, the intestate.

The exceptions are sustained and a new trial granted.

*W. B. Lymer* (*Thompson* & *Wilder* with him on the brief) for plaintiff.

*M. F. Prosser* (*Kinney, Prosser, Anderson* & *Marx* on the brief) for defendants.