TAX APPEALS NOS. 529 TO 591, INCLUSIVE,
LAWRENCE K. MAENAKA, ET ALS.

NO. 2941.

ARGUED JANUARY 5, 1955.                    DECIDED JULY 11, 1955.

TOWSE, C. J., LE BARON AND STAINBACK, JJ.

OPINION OF THE COURT BY TOWSE, C. J.

This is an appeal from a decision of the tax appeal court reducing the assessments on sixty-two parcels of real estate in the Damon Tract, city and county of Honolulu, after reassessment by the tax commissioner and confirmation by the board of review of the first taxation division.

The cause was argued and submitted to the full court. The term of one of the justices, in the interim, having expired and he having left the bench, it was stipulated by all parties that the case be decided and opinion rendered by the two remaining justices.

The petitioners-appellees are lessees of the parcels, all of which are owned in fee by the Damon Estate. As of

January 1, 1949 and as empowered by Chapter 94, Revised Laws of Hawaii 1945, the commissioner reappraised the entire Damon Tract area for the purpose of reassessing the realty and leasehold improvements for real property taxes. Upon the reappraisal, the Damon Estate was assessed for the tax year 1949, the lessees being subsequently notified by the Estate of the taxes payable upon each of their respective parcels as reassessed.

Sixty-two appeals from the reassessed valuation of the realty and twelve appeals from the reassessed valuation of improvements were taken to the tax appeal court from the decision of the board of review of the first taxation division sustaining the reassessment. By stipulation, the sixty-two appeals were consolidated into nine categories premised upon the location of the respective parcels in the Damon Tract and upon the unit foot values of the parcels established by the assessor.

The consolidated appeals to the tax appeal court were upon the grounds:

That the tax assessor failed to adopt appropriate and systematic methods for appraisal and assessments, resulting in inequities based upon character and use of the leased premises both within the Damon Tract area itself and in comparison to other areas.

That the tax assessor failed to keep and compile complete records of the methods used and the consideration given to elements of value which have influenced the values determined, as required by law, thus depriving the lessees of both statutory and constitutional rights.

That the tax assessor improperly classified the Damon Tract area as residential by failing to take into account its character and use as mandated by statute.

That the tax assessor failed to consider the factors which he is mandated by statute to take into account in the determination of value.

That the tax assessor in determining the value of the improvements failed to take into account the obsolescence factor determined by the remaining period of the leasehold agreements which he is mandated by statute to consider.

The contentions of the lessees were in turn consolidated into two issues by the tax appeal court, *viz*: "(1) That the Tax Assessor failed to comply with the provisions of Section 5146 of the Revised Laws of Hawaii 1945 with regard to keeping of complete records and taking into consideration various factors required by said section to be taken into account, and (2) that in any event the Tax Assessor in reassessing the Damon Tract in 1949 over-assessed the parcels involved in these appeals."

The contentions that the assessor failed to compile and keep complete records, and that the improvements involved in the twelve appeals were improperly assessed were rejected by the tax appeal court. The court found "that the Tax Assessor sufficiently complied with the requirements of Section 5146, Revised Laws of Hawaii 1945 (as applicable in the year 1949 prior to the 1951 amendment) and that the assessments here involved are therefore not invalid * * *." It further found that the reassessment of the improvements contested in the twelve appeals were properly computed by the tax assessor.

The contention that the tax assessor failed to consider the various factors mandated by statute and also failed to adopt appropriate methods in the determination of value was sustained, the tax appeal court finding "that in view of the nature of the Damon Tract and the fact that there had been no change in 1949 in character and use of the parcels here involved, the acreage method of valuation should have been applied by the Tax Assessor rather than the unit square foot method of valuation" and "that none of the areas other than the Damon Tract as to which testimony was adduced was similar to the Damon Tract and

therefore [the tax appeal court] does not, in fixing the valuation of the parcels here involved, rely on comparison with any specific area, although it has considered evidence as to these other areas as well as its actual view of the Damon Tract and these other areas in reaching its conclusions herein."

Upon those findings, the tax appeal court concluded that the rate of increase in the realty assessments adopted by the commissioner was excessive, and ordered that the reassessments for 1949 be computed "by continuing on the acreage method of valuation and by increasing the land value assessments in effect in 1948 by twenty per cent (20%)."

The commissioner prosecutes this appeal from that decision upon the following grounds:

"* * * The Tax Appeal Court erred in holding that the acreage method of valuation should have been applied by the tax assessor rather than the unit square foot method. * * *

"* * * The Tax Appeal Court erred in that it determined the value of the land by an incorrect method. * * *

"* * * The Tax Appeal Court erred in holding that the proper land value assessments are reached in all instances here involved by increasing the land value assessments for 1948 by 20%. * * *

"* * * It was error for the Tax Appeal Court to redetermine the assessed value when there was insufficient evidence from which to do so either by the acreage method or the unit foot value method. * * *."

The foregoing specifications were consolidated by the appellant into two issues for determination upon this appeal:

First: Was the method used by the tax assessor in computing the land value assessments pursuant to and in compliance with the applicable statute?

Second: Was the tax appeal court justified in redetermining the assessed values, irrespective of the method of assessment employed?

We find at the outset that the findings of the tax appeal court "that the Tax Commissioner sufficiently complied with the requirements of Section 5146, Revised Laws of Hawaii 1945 (as applicable in the year 1949 prior to the 1951 amendment)" in compiling and keeping complete records and that the assessments of the improvements involved in the twelve appeals were properly determined are not in issue before this Court inasmuch as no appeal therefrom has been perfected by the appellees as required by Section 5214, Revised Laws of Hawaii 1945 which provides, in part, that "[a]ny taxpayer aggrieved or the assessor may appeal to the supreme court from the decision of the tax appeal court by filing a written notice of appeal with the tax appeal court and depositing therewith the costs of appeal within twenty days after the filing of the decision."

The first issue, whether the tax appeal court erred in finding that the acreage valuation rather than the unit square foot method should have been applied in computing the reassessments, is determinable by inquiry into the construction of the language of the applicable statute. Section 5146, Revised Laws of Hawaii 1945, as amended, provides in part:

"* * * It shall be the duty of the commissioner to cause to be determined and assessed the value of all taxable real property by appropriate systematic methods so selected and applied as to secure, as far as possible, uniform and equalized results throughout the Territory. * * *

"In determining values the land in each taxation district shall be classified in accordance with its character and use, and whenever feasible to do so a unit of quantity shall be established for each class. Whenever land has

been divided into lots or parcels which are used or suitable for use for residential, commercial or other urban or village purposes, the unit of quantity shall be so chosen as to permit of the use of mathematical tables or formulas designed to determine equitably the effect, upon the value, of street or highway frontages, depth from the street or highway, shape, distance from street corners, and any other physical elements which affect value, whether to increase or decrease the same. The commissioner shall select and require the use of such tables in assessing land for all areas where this can be done appropriately. In other areas such unit of quantity shall be selected and used as is appropriate. In determining the value of land consideration shall be given to the advantage or disadvantage of location, accessibility, transportation facilities, size, shape, topography, quality of soil, water privileges, availability of water and its cost, easements and appurtenances, productivity and nature of use, and further to selling prices, and to the opinions of persons who may be considered to have special knowledge of land values, and further to all other influences whether similar to those listed or not, which fairly and reasonably bear upon the question of value. * * *." (R. L. H. 1945, § 5146, as amended.)

Appellant contends, upon the foregoing language, that utilization of the unit square foot method of valuation is mandated in the circumstances here presented. Appellant argues that the Damon Tract, having been subdivided into lots or parcels and zoned for unrestricted residential, hotel-apartment and business uses, may thus properly be categorized under the statutory language of land that "has been divided into lots or parcels which are used or suitable for use for residential, commercial or other village purposes." Accordingly, appellant urges the conclusion that "the unit of quantity shall be so chosen as to permit of the use of mathematical tables or formulas designed to

determine equitably the effect, upon the value, of street or highway frontages, depth from the street or highway, shape, distance from street corners, and any other physical elements which affect value." Upon that premise, it is contended that the language of the statute that "[t]he commissioner shall select and require the use of such tables in assessing lands for all areas where this can be done appropriately * * *" mandates utilization of a unit of quantity "so chosen as to permit of the use of mathematical tables or formulas" in determining the value of the parcels of land in question.

In the interpretation urged by the appellant, where land has been divided into lots or parcels and is utilized or is suitable for residential, commercial or other urban and village purposes, the statute divests discretionary authority from the commissioner in the selection of the unit of quantity to be applied in valuation, and precludes the use of a unit of quantity of average square foot or acre which does not permit use of depth and other tables or formulas. The conclusion, therefore, is urged that the tax appeal court departed from the mandatory language of the statute by employing the acreage method instead of the unit foot method which permits use of such "mathematical tables or formulas."

We do not conclude that the provisions of Section 5146, Revised Laws of Hawaii 1945, mandate the utilization of the unit square foot method of valuation of the parcels here involved. The section concededly provides for the adoption of a unit of quantity which permits the use of mathematical tables or formulas "[w]henever land has been divided into lots or parcels which are used or suitable for use for residential, commercial or other urban or village purposes." Whether such lots or parcels so subdivided are utilized or are suitable for residential, commercial or other urban or village purposes is dependent

upon the facts relating to each parcel under consideration. The section further provides that "[t]he commissioner shall select and require the use of such tables in assessing land for all areas *where this can be done appropriately*" and "[i]n other areas such unit of quantity shall be selected and used *as is appropriate.*" (Emphasis added.) The provision of the statute that "[i]t shall be the duty of the commissioner to cause to be determined and assessed the value of all taxable real property by appropriate systematic methods so selected and applied as to secure, as far as possible, uniform and equalized results throughout the Territory," in our opinion, does not, as the appellant contends, mandate utilization of the unit square foot method of assessment in the instant case.

The Damon Tract area in which the parcels here involved are located, has been zoned as "unrestricted residential" by the city planning commission since May, 1930. This classification includes single-unit or two-family dwellings and improvements, and appurtenances utilized for truck gardens, flower gardens and greenhouses, as well as hospitals, sanitariums, churches and schools. Under the existing zoning, the properties here involved may not be utilized for industrial purposes.

Appellant concedes that the unit square foot method of assessment was used in determining the valuation of industrial and business property in Honolulu; but was used in assessing "farm and home" areas "only when we feel it is applicable." It is admitted that no survey of the Damon Tract area was made by the commissioner to determine the number of lessees utilizing leased parcels in whole or in part for subsistence farming. The testimony establishes that a survey by questionnaire conducted by the Kaloaloa neighborhood association in 1947 indicates that a substantial number of Damon Tract residents reported either that their income or supplementation

thereof was by subsistence farming in various forms. Forty-five of the sixty-two lessees herein responded to the questionnaire. Twenty-five reportedly utilized their parcels for subsistence farming. The testimony of a typical respresentative tenant of the tract established that he supplemented his income by raising chickens, turkeys, rabbits, some fruit trees and vegetables upon his one acre parcel.

In connection with utilization, appellant admits that there was no change in the character and use of the parcels in the year 1949. The record recites, and the tax appeal court so found, that prior to 1949 the appellant had used the acreage method of valuation. The record further discloses that in 1949 the unit square foot method was adopted and instituted, notwithstanding the conceded fact that no change had occurred in the year 1949 in the character and use of the parcels. Upon the finding that "there had been no change in 1949 in character and use of the parcels here involved" and "in view of the nature of the Damon Tract," the tax appeal court concluded that "the acreage method of valuation should have been applied by the Tax Assessor rather than the unit square foot method of valuation." We find that in the circumstances here presented, the tax appeal court did not err in this conclusion.

The second issue for determination is whether, irrespective of the method of assessment employed, the tax appeal court erred in computing the reassessed values of the parcels for the year 1949 by increasing the 1948 assessments by 20%.

We are cognizant of the rule established in *In Re Taxes A. W. Carter, Trustee,* 27 Haw. 826, 828, that "the tax appeal court, similarly as this Court, must base its conclusions upon the evidence adduced and not upon what might have been adduced." And "[t]his court has uni-

formly held that it does not reduce or increase the valuation made by a tax appeal court which appears to be fair and just but allows it to stand unless shown to be erroneous or based on a wrong theory or insufficient or defective data." (*In Re Taxes Wailuku Sugar Co.,* 18 Haw. 422, 423; *In Re Taxes Makee Sugar Co.,* 19 Haw. 331.) "The assessor's opportunity to sustain his valuation by evidence ends when he rests the case with the tax appeal court whose responsible duty is to value the property in accordance with the facts before it, using its own common sense and its knowledge of existing conditions." (*In Re Taxes Wailuku Sugar Co., supra* at 424.)

Determination of the second issue must therefore be premised upon inquiry into whether the 20% increase over the 1948 assessments as ordered by the tax appeal court was "fair and just" and predicated upon sufficient evidence adducible of record.

Section 5139, Revised Laws of Hawaii 1945, provides in part: "* * * [A]ll real property in each taxation division shall be subject each year to a tax of such rate per centum as shall be determined in the manner provided in Section 5252 *upon its fair and reasonable value,* determined in the manner provided by law." (Emphasis added.) This court declared in *In Re Taxes Bishop Estate,* 33 Haw. 149, 152, 153 that: "The authorities uniformly hold that the terms 'value,' 'market value,' 'fair value,' 'reasonable value,' and 'fair and reasonable cash value' are synonymous expressions. * * * What is the fair and reasonable value of a piece of property, therefore, becomes a question which can only be solved by the consideration of the facts of each case so variant are the circumstances under which this question arises."

Appellant contends that the record bears no evidence of the market value of the parcels here involved, and since comparative assessments of other comparable areas "are

useless without evidence of market value," "the record is utterly void of evidence from which to fix a new figure for the Damon Tract assessment." It is contended in this connection that "the tax appeal court had no sound basis from which to find that the Damon Tract assessments should be raised by 20% over the preceding assessment," * * *" and that "[a]lthough this 20% figure is admittedly the approximate average increase for the 1949 land assessments over the 1946 assessment, such a figure is worthless as a yardstick in determining the value of any particular parcel or area of land."

The patent inconsistency of the contention is demonstrated by the bill of particulars of the appellant, which, in describing the method of valuation used, particularizes in part:

"However, as stated above, the tract is owned entirely by one lessor, and none of the lots have ever been sold in fee simple, so that no selling prices are available for use in arriving at values.

"In such a case, the normal procedure of the Assessor is to use the capitalized rentals as a factor in determining values, as a substitute for selling prices. In this case, the Assessor feels that the rentals of the Damon Tract area are at an artificially low level and do not reflect the true value of the lands, due to the expiration period of the old leases and the contemplated resubdivision and new leases to be made pending, however, the approval of subdivision plans by the City Planning Commission.

"As a result, the Assessor has compared the general characteristics and date [sic] concerning the Damon Tract area with other comparable areas in Honolulu, concerning which more information is available, in order that the assessments of the Damon Tract area will produce uniform and equalized results, so far as is possible. These other areas, therefore, have been used as a guide for arriving at

152

basic value levels in the Damon Tract area, and while not identical either in nature or value assigned, are sufficiently similar to permit of comparison, making due allowance for differences between the areas."

The areas "in which the character, use, general type of dwellings, and other factors are similar to the Damon Tract" and which appellant stipulated that he used as comparable were the Kalihi Valley area, adjoining Kamehameha IV Road, and the Upper Manoa Valley area.

It appears, and the appellant so stipulated, that evidence of fair market value premised upon fee simple sales of Damon Tract parcels was nonexistent. It further appears that, as an alternative method of determining market value in the circumstances presented, the appellant did in fact compare the area here under consideration with the market value of sales in comparable areas in the Kalihi Valley and Upper Manoa Valley areas which he had selected. The record discloses that the appellees in challenging the reassessments, used the same method of comparison and accepted as correct the market value of these two comparable areas selected by the appellant, doing so in the apparent absence of other available competent evidence of fair market value. In addition thereto, appellees offered in evidence the market value as fixed by the tax commissioner in the Maunalua area which they deemed more nearly comparable to the Damon Tract area than the two areas selected by the tax commissioner.

That the tax appeal court also recognized the impossibility of presenting evidence of the fair market value of the parcels here involved is disclosed in its opinion: "A number of witnesses were offered by both the appellants and the Tax Assessor but no specific testimony was adduced from any witness fixing the market value of any of the parcels involved in these appeals. It appeared that no satisfactory evidence of sales transactions upon which

market value could be based was available as all parcels involved were leaseholds. All evidence as to value was adduced by comparing the Damon Tract property and the assessments thereon in 1949 with other areas in Honolulu and the assessments thereon in 1949. In addition to hearing testimony as to the Damon Tract and other areas, the Court actually viewed all the areas involved."

It is true, as the appellant contends, that an erroneous assessment may not be established merely by a showing that other property has been assessed too high or too low. "It has been repeatedly held by this court that the issue in any given tax case is whether the property involved in the appeal was assessed too high and not whether other property was assessed too low. * * * 'A taxpayer cannot complain if he is properly assessed, irrespective of whether some one else is properly assessed or not.' *O. R. & L. Co.* v. *Assessor,* 17 Haw. 163, 165. 'The mere fact that other property in the same vicinity and of the same description has been assessed for a larger or a smaller amount than the property of this taxpayer is no ground to base a claim for relief upon.' *In re Taxes of Menefoglio,* 25 Haw. 106, 107. * * *." (*Re Taxes Charles H. Swain,* 29 Haw. 183, 184.)

That the tax appeal court did not premise its conclusions upon evidence of valuation of other comparable areas is indicated in its findings "that none of the areas other than the Damon Tract as to which testimony was adduced was similar to the Damon Tract" and therefore, the tax appeal court did not, "in fixing the valuation of the parcels here involved, rely on comparison with any specific area, although it has considered evidence as to these other areas as well as its actual view of the Damon Tract and these other areas in reaching its conclusions."

The record discloses that the tax appeal court's determination of the 1949 assessment of the parcels

involved was premised upon competent evidence of record. The appellant testified that the average increase of realty assessments throughout the entire city and county of Honolulu for 1949 was approximately 20% higher than the assessments of several years prior. The tax appeal court found "that although there had been no change in 1949 from prior years in the character and use of the property here involved, the Tax Assessor was justified in increasing the land assessments for 1949 over those in effect in 1948, the property apparently having been under-assessed in 1948." However, it also concluded that the 90% to 480% rate of increase adopted by the appellant in establishing the 1949 assessment of the 62 parcels was in fact excessive, and directed that the assessments for 1949 be established by an increase of only 20% over the 1948 assessments.

In view of the mandate of Section 5146, Revised Laws of Hawaii 1945, the record is replete with evidence bearing upon the advantage or disadvantage of location, accessibility, transportation facilities, size, shape, topography, quality of soil, water privileges, availability of water and its cost, productivity and nature of use, and to the opinions of persons who may be considered to have special knowledge of land values, and further to all other influences whether similar to those listed in the statute or not, which fairly and reasonably bear upon the question of value.

We are cognizant that this court is not limited by the findings of fact as determined below, and may probe the record in order to weigh the evidence or permit introduction of additional evidence material to the matter in dispute. (R. L. H. 1945, § 5214; *In Re Leo L. Yerian*, 35 Haw. 855.) Reference to or discussion herein of the voluminous evidence presented by the parties which was considered in the determination of land value would serve no useful purpose save to illustrate that the tax appeal

court did in fact have ample competent evidence before it and correctly concluded as it did. We find no reason to disturb that conclusion.

" 'The decision of the tax appeal court fixing the value of property will be sustained unless shown to have been erroneous, and the burden of proof is upon the appellant.' *Re Taxes Castle,* 24 Haw. 594." (*Re Taxes Bishop Estate,* 33 Haw. 149, 160.) "This the appellant has absolutely failed to do. He nowhere shows wherein the decision is erroneous or based on a wrong theory or upon insufficient or defective data." (*Re Taxes A. W. Carter, Trustee,* 27 Haw. 826, 829; *In Re Taxes Makee Sugar Co.,* 19 Haw. 331; *In Re Taxes Wailuku Sugar Co.,* 18 Haw. 422.) On the contrary, we find that the tax appeal court valued the parcels with which we are here concerned "in accordance with the facts before it, using its own common sense and its knowledge of existing conditions." (*In Re Taxes Wailuku Sugar Co.,* 18 Haw. 422, 424.)

The decision appealed from is affirmed.

*H. W. Nickelsen,* Deputy Attorney General (also on the briefs) for the appellant Territory.

*Harriet Bouslog* (*Bouslog & Symonds* on the brief) for appellees.