IN THE MATTER OF THE TAX APPEAL OF
HAWAIIAN LAND COMPANY, LIMITED.

No. 4829

August 6, 1971

RICHARDSON, C.J., MARUMOTO, ABE,
LEVINSON, JJ., AND CIRCUIT JUDGE OGATA
IN PLACE OF KOBAYASHI, J., DISQUALIFIED.

OPINION OF THE COURT BY ABE, J.

As of January 1, 1963 the Assessor valued and assessed Ala Moana Center as follows.

| | |
|---|---|
| Building | $ 7,321,300 |
| Land | 9,732,800 |
| | $17,054,100 |

On the other hand, Hawaiian Land Company, Ltd. ("Tax-payer") claimed the following values were applicable to Ala Moana as of the same date:

| | |
|---|---|
| Building | $ 6,930,000 |
| Land | 7,274,000 |
| | $14,204,000 |

Thus, Taxpayer appealed to the Board of Review alleging the Assessor committed numerous errors that would allow assessment to be lowered under provisions of HRS § 232-3 (1968).[1] Forthwith the Board determined the proper assessment to be:

| | |
|---|---|
| Building | $ 9,357,600 |
| Land | 7,588,896 |
| | $16,946,496 |

Thereupon, the Assessor amended the assessment by inserting those amounts in place of the original. Taxpayer appealed this decision to the Tax Appeal Court for a trial de novo. There, though the Tax Appeal Court did not find illegality or unconstitutionality in the Assessor's methods under subsections (2) or (4), nevertheless it lowered the amount of the assessment to:

| | |
|---|---|
| Building | $ 6,831,104 |
| Land | 7,588,896 |
| | $14,420,000 |

---

[1] HRS § 232-3 (1968) reads in part:

"In the case of a real property tax appeal, no taxpayer or county shall be deemed aggrieved by an assessment, *nor shall an assessment be lowered* * * * unless there is shown:

 (1) Assessment of the property in excess of its one hundred per cent fair market value or

 (2) Lack of uniformity or inequality, brought about by illegality of the methods used or error in the application of the methods to the property involved, or

 * * * * *

 (4) Illegality, on any ground arising under the Constitution or laws of the United States or the laws of the State (in addition to the ground of illegality of the methods used, mentioned in clause (2))." (Emphasis added.)

The Assessor appealed this judgment and the Taxpayer cross-appealed.

For convenience and easier understanding of the case, first we shall consider some of the issues raised by the Taxpayer's cross-appeal; second, the issues raised by the Assessor's appeal; and third, the remaining issue raised by the Taxpayer.

## I.

The Taxpayer's first point in its cross-appeal questions the assessment of its property at 70 per cent of the fair market value and claims the denial of due process and equal protection of the laws in violation of our Federal and State Constitutions.

## A.

From evidence based on prices associated with recorded property transactions, the Tax Appeal Court found that "the average assessment ratio for Oahu on January 1, 1963 was 58 per cent of the sale price." However, the court also found that "the Assessor has nevertheless consciously sought to apply a fixed rate of 70 per cent and is not otherwise guilty of intentional discrimination." Predicated on this latter finding, the Tax Appeal Court concluded that though there were discrepancies in the assessment ratios, there was no "intentional violation of the essential principle of practical uniformity" and no violation of the equal protection clauses.

In the evaluation or appraisal of land, it must be recognized that at best the estimated value of any parcel of land is the considered opinion of individuals. Frankly, it is nothing more than an "educated" guess. Thus, for land appraisal, it is unreasonable to expect the exactness contended for by the Taxpayer because as it has been noted the evaluation of land is not in the field of exact science as the Taxpayer attempts to have this court believe. We believe that this factor is substantiated by the testimony of six ex-

pert witnesses called by the Taxpayer to evaluate the land and each of them arrived at a different figure. In fact, one of the witnesses submitted two different figures as value for the land (see footnote 14 *infra*).

Also, the tax year 1963, involved here, was during a period of tremendous economic growth within the State of Hawaii, following its admission into the Union of the United States of America. With this rapid growth of our economy, land prices soared. This rise or appreciation of the prices of land was further accentuated by speculative purchasers. Thus, it is logical and reasonable that based on sales prices, in 1963 the assessments of parcels of land would be less than 70 per cent of the sales prices. It is natural for assessment to lag behind the sales prices in such period of rapid economic growth. Therefore, it would be reasonable to surmise that if the subject land had been offered for sale in 1963, it could have been sold for considerably more than $24,363,000 (assessment of $17,054,100 brought up to 100 per cent of the fair market value). Then, subject property also may not have been assessed at 70 per cent but at some lesser ratio of the sale price.

We are aware that H.R.C.P. Rule 52(a) is not applicable in this case; however, we have said findings and decisions of the Tax Appeal Court are to be sustained unless they are shown to be erroneous, and the burden of proof is upon the appellant. *Tax Appeals, Maenaka,* 41 Haw. 141 (1955); *Re Taxes Onomea Sugar Co.,* 25 Haw. 278 (1920); *Re Taxes Waiakea Mill Co.,* 24 Haw. 333 (1918). In *Re Taxes Bishop Estate,* 33 Haw. 149, 159 (1934), we said "that the findings of a tax appeal court are entitled to great weight; that where such findings depend upon the credibility of witnesses and upon the weight of conflicting statements of witnesses, such findings are to be accorded the same weight as the findings of a circuit judge at chambers."

It appears that the Taxpayer's contention is that the finding is clearly erroneous because of its proof in form of studies that other parcels of land according to sales record

were on the average assessed at 58 per cent of the sales price. Though the studies may show that parcels of land studied were assessed on the average ratio of 58 per cent of the sales prices, it does not mean that the Assessor did not in good faith and within his capabilities estimate the fair market value of those parcels and assess them at 70 per cent of such value. The studies merely show that the sales prices for those parcels were higher than the Assessor's estimated fair market value.

We recognize that such studies may have probative value; however, it is not sufficient to show that the finding of the Tax Appeal Court on this issue is erroneous. In *Re Taxes Ewa & Waialua*, 47 Haw. 41, 50, 384 P.2d 287 (1963), we said: "An erroneous assessment is not established merely because other property has been assessed too low if the tax commissioner has acted in good faith and if other property in general has not been assessed at a lower rate."

### B.

Also, it seems that the Taxpayer's contention is that by showing these alleged discrepancies it has met the burden of proving invidious discrimination condemned by the equal protection clause. We disagree.

We believe that the equal protection clauses of our Federal and State Constitutions do not dictate the Assessor to accomplish the impossible task of having each parcel of land within the State of Hawaii assessed at absolute 70 per cent of its fair market value.

Now, assuming that Taxpayer has shown discrepancies in assessment of different parcels of land, at the most it has proven mistakes of judgment. However, that is not sufficient to prove invidious discrimination because "mere errors of judgment by officials will not support a claim of discrimination. There must be something more—something which in effect amounts to an intentional violation of the essential principle of practical uniformity. The good faith of such officers and the validity of their actions are presumed;

when assailed, the burden of proof is upon the complaining party." *Sunday Lake Iron Co. v. Wakefield,* 247 U.S. 350, 353 (1918). *See also Sioux City Bridge Co. v. Dakota County,* 260 U.S. 441, 447 (1923).

## C.

The record also shows that the Assessor did not have the necessary staff, or funds to hire such a staff, to evaluate annually all the parcels of land in the State of Hawaii. Thus, the Assessor instituted a system whereby most of the parcels were evaluated once every two or three years, excepting in new developments and new subdivisions where the general practice was to evaluate property annually until the value of land stabilized in such development or subdivision. The Taxpayer's subject property was one of the parcels subject to an annual evaluation and it attacks this program as a denial of the equal protection of the laws guaranteed by our Constitutions.

It would appear that under the circumstances the Assessor was justified in invoking some program of assessment. We believe the Assessor in instituting the assessment program above stated used good common sense judgment, as well as sound business management practice. By the program, the Assessor classified certain parcels of land to be assessed annually, which included subject land. All classification by necessity brings about some discriminations. However, this discriminatory factor alone does not void such classification under the equal protection clause because "it has long been settled that a classification, though discriminatory, is not arbitrary nor violative of the Equal Protection Clause of the Fourteenth Amendment if any state of facts reasonably can be conceived that would sustain it." *Allied Stores of Ohio v. Bowers,* 358 U.S. 522, 528 (1959).

The Taxpayer seems to contend that the evidence showing the practice above mentioned shows invidious discrimina-

tion. We disagree for the reasons above stated. Also, [t]he general law is that one who assails the constitutionality of a classification has the burden of proving that it does not rest upon reasonable basis and that it is an invidious discrimination * * * " *State v. Johnston*, 51 Haw. 195, 206, 456 P.2d 805, 812 (1969). And the Taxpayer has not met this burden.

## II.

The remaining basic issue on appeal is the interpretation of HRS § 232-3(1) (1968). However, before we can reach this basic issue, we are required to decide two preliminary questions.

## A.

It was not until the Assessor submitted his Reply Brief to this court that he first raised the issue regarding the proper interpretation of Section 232-3(1). For this reason the Taxpayer urges that this issue has long since been waived. We disagree.

The Taxpayer argues that this court only should reverse a judgment on a legal theory that appellant presented to the trial court.[2] This has been and is the general rule both in Hawaii[3] and elsewhere.[4] But, as stated in *Bank of Hawaii v. Char*, 43 Haw. 223, 225 (1959), "[t]he rule is not inflexible" and appellate courts will deviate when justice requires. *See also Hormel v. Helvering*, 312 U.S. 552, 556, 557 (1941); *Deakyne v. Commissioners of Lewes*, 416 F.2d 290, 295 (3rd Cir. 1969); *Ketler v. Commissioner*, 196 F.2d 822,

---

[2]The Taxpayer also suggests waiver because the point was first raised in the Reply Brief. It implies this placed it at a disadvantage. However, this court allowed both parties to submit further supplemental briefs on the matter and the Taxpayer has had an adequate opportunity to argue its points.

[3]Kawamoto v. Yasutake, 49 Haw. 42, 410 P.2d 976 (1966); Bank of Hawaii v. Char, 43 Haw. 223 (1959); Bank of Hawaii v. Char, 40 Haw. 463 (1954).

[4]United States v. Tyrrell, 329 F.2d 341 (7th Cir. 1964); Apex Smelting Co. v. Burns, 175 F.2d 978 (7th Cir. 1949).

827 (7th Cir. 1952) ; F. James, *Civil Procedure* 528 (1965).

Several factors should be considered before exercising the discretion to hear new issues. Perhaps foremost is whether the issue goes to the integrity of the fact finding process. For example, in *Kawamoto v. Yasutake*, 49 Haw. 42, 410 P.2d 976 (1966) we would not consider an argument on its merits first raised on appeal because the defendant argued prejudicial error emanating from a voir dire question to the jury panel. If the argument were well founded then a whole new trial would be required. Also present in that case was the issue to what extent an alleged error may have been *correctable* if the objection had been properly raised. This court emphasized that point in *Bank of Hawaii v. Char*, 40 Haw. 463, 467 (1954), where we noted that had the objections been properly raised the underlying reasons for the objection could have been cured.

Closely associated with this reason is whether the issue involves questions of fact that were not but could have been fully developed in the trial court. *Waterhouse v. Capital Inv. Co.*, 44 Haw. 235, 240, 353 P.2d 1007, 1012 (1960); *Uuku v. Kaio*, 20 Haw. 567, 572, 573 (1911).

If none of these factors are present, it is well within our discretion to hear new legal arguments, especially if it involves a question of great public import. *Kennedy v. Silas Mason Co.*, 334 U.S. 249 (1948); *Duarte v. Bank of Hawaii*, 287 F.2d 51 (1961) affirming the territorial Supreme Court decision in *Bank of Hawaii v. Char*, 43 Haw. 223 (1959).

All of the above criteria dictate that the interpretation of Section 232-3(1) should be considered. Both parties presented extensive evidence and vigorously argued what they felt was the proper valuation of the property thereby fully developing the factual basis. This issue does not attack the integrity of the fact finding process, but only whether the findings justify lowering the assessment. Moreover, as it has been noted above, the parties were required to and did submit supplemental briefs and this issue has been fully and ably argued. Thus, we will consider Section 232-3(1).

54

## B.

On appeal from the Review Board the Taxpayer initially argued that the Board erroneously valued both the buildings and the land but later amended its notice of appeal to include only the value of the buildings. After the amendment, the Tax Appeal Court ruled that because the Assessor did not cross-appeal the issue of the value of the land, the court lacked jurisdiction to alter it. The court reasoned that as HRS § 232-13 (1968) limits its jurisdiction to assessments in dispute,[5] it would acquire jurisdiction over the land value only if such valuation is appealed. Thus, once the Taxpayer eliminated the land valuation from dispute the court's jurisdiction over that valuation vanished.

We do not agree. The Tax Appeal Court based its argument on the assumption that as used in HRS § 232-13 (1968) "valuation" and "assessment" refers to *either* building *or* land values. If such were the case, the Tax Appeal Court's reasoning may be supportable. However, *at the time this dispute arose* it is quite clear that "assessment" and "valuation" referred to the *aggregate* value of real property and not the component parts.

Under the act "property" is defined as including both the land and buildings;[6] and under the law applicable when the dispute arose, the Taxpayer's assessment and notification of such assessment had to contain only the value placed on its "property."[7] Thus it would appear that the legislature contemplated the aggregate value of property to comprise the assessment. Only after the present dispute arose did the legislature amend both the valuation section and the notification provisions to allow land and buildings to be

---

[5]Section 232-13 states in part that:

"*The jurisdiction of the tax appeal court is limited to the amount of valuation * * * in dispute* as shown on the one hand by the amount claimed by the taxpayer * * * and on the other hand by the amount of the assessment * * *.*" (Emphasis added.)

[6]RLH § 128-1 (1955), *as amended,* HRS § 246-1 (1968).

[7]RLH §§ 128-27, 28 (1955), *as amended,* HRS §§ 246-43, 44 (1968).

treated separately.[8] Thus, we hold that before the amendment, assessment and valuation as used in Section 232-13 referred to the total value of real property and once the Taxpayer appealed the assessment both the value of the land and buildings were in dispute.[9]

We hold the Assessor's interpretation to be correct.

## C.

In 1957 the legislature enacted § 232-3 and added it to the then existing tax appeal section. Before this amendment no comparable section existed and any evaluation by the Assessor could be lowered if a reviewing body felt the assessment did not represent the fair market value of the assessed property. *See Re Taxes Ewa & Waialua*, 47 Haw. 41, 50, 51, 384 P.2d 287, 291, 292 (1963); *Re Taxes Onomea Sugar Co.*, 25 Haw. 278 (1920); *Alexander v. Fornander*, 6 Haw. 322 (1882). This approach differs from that followed in other jurisdictions. While most statutes allow some form of review and adjustment of an assessment,[10] usually a

---

[8]HRS §§ 246-43, 44 (1968) (the amendment occurred in 1963). The applicable rules of procedure of the Tax Appeal Court promulgated under RLH § 116-11 (1955), *as amended*, HRS § 232-14(a) (1968) did not provide for separate appeals for land and buildings. In 1969 this court changed the rules to allow separate appeals. Rules of the Tax Appeal Court Rule 2(B) (2) (c) effective June 2, 1969.

[9]Also it should be noted that though the Tax Appeal Court ruled that the value of land was not before the court, it recognized that in the evaluation of land, both components, the land itself and the improvements, should be considered together. The Tax Appeal Court on page 20 of its decision said "that from a purely appraisal point of view, any allocation of overall value between land and buildings is academic and arbitrary." And quoting Mr. Lum, one of the Taxpayer's expert witnesses " 'it does not make any difference whether you allocate so much for land or so much for buildings'; that, theoretically, it would be possible to end up with a zero valuation for the buildings * * *."

"It could probably be argued that where the land value is known, allocation is simply a matter of attributing the balance, or residual, to the buildings. The mere fact that the fair market value of $5.00 per square foot for the land is not in dispute does not mean that no inquiry may be made as to the actual land value for the purposes of ascertaining the value to be allocated to the buildings."

[10]T. Cooley, III Law of Taxation, § 1200 (4th Ed. 1924).

reviewing body may not adjust an assessment merely because its opinion of value differs from that of the Assessor.[11]

The Taxpayer contends that if HRS § 232-3 (1968) is interpreted (as urged by the Assessor) "to preclude appellate review of the Assessor's determination of fair market value * * *, except to the extent that the taxpayer can allege and successfully prove not only that the Assessor's valuation was erroneously excessive, but that it exceeded" one hundred per cent of the full market value, the "statute would be unconstitutional on its face as denying the due process and the equal protection of the laws as guaranteed by the Hawaii and United States Constitutions."

We do not so interpret the statute. Our interpretation is that HRS § 232-3 (1968) does not deny a taxpayer his right to appeal the assessor's assessment. However, it requires a taxpayer on appeal to show that the assessor's assessment exceeds 100 per cent of the fair market value of the property; otherwise, it provides that he is not to "be deemed aggrieved by an assessment, nor shall an assessment be lowered." In other words, the statute does not prevent an appeal by a taxpayer to question the assessor's assessment, but it limits the authority of the reviewing body to amend or modify the assessment. This limitation was enacted by the legislature predicated upon the assumption that differences of opinion as to value are inevitable. It is not uncommon for legislative acts to limit the authority of the reviewing body to vacate, amend or modify decisions or orders of administrative bodies. Such provisions are found in HRS § 76-49 (Civil Service), HRS § 91-17 (Administrative Procedure) and HRS §§ 568-9, 10 (Arbitration and Award) to name a few.

---

[11]May Dept. Stores Co. v. Comm'n., 308 S.W.2d 748, 764 (Mo. 1958); People v. S.B.A. Co., 34 Ill.2d 373, 215 N.E.2d 233, 235 (1966); Naph-Sol Refining Co. v. Muskegon, 346 Mich. 16, 20, 77 N.W.2d 255, 257 (1956).

Generally, the taxpayer must show actual or constructive fraud or other illegality. *E.g.*, People v. S.B.A. Co., 34 Ill. 2d at 376, 215 N.E.2d at 235 (1966).

In *Re Sprinkle & Chow Liquor License,* 40 Haw. 485, 491 (1954), we said:

"That the legislature may define and limit the right of appeal is well settled both by Hawaiian decisions and decisions from other jurisdictions. * * *

'The remedy * * * by appeal * * * is not a common-law right and exists only by virtue of statutory or constitutional provision.' * * *

The legislature has, except as it may be restricted by constitutional provision, complete control over the remedy of appeal which may, in its discretion, grant or take away the remedy, and prescribe in what cases, under what circumstances, in what manner, and to or from what courts, appeals may be taken. * * *" (Citations omitted.)

*See also Szuchy v. Hillside Coal & Iron Co.,* 150 N.Y. 219, 44 N.E. 974 (1896); *Superior Wheeler Cake Corp. v. Superior Court,* 203 Cal. 384, 264 P. 488 (1928).

We also recognized that the legislature may grant the right of appeal to a certain class of people and deny others this right. *Re App. C/C Clerk Re Registration of Buda,* 44 Haw. 220, 352 P.2d 846 (1960); *Mahelona Hospital v. Kauai Civil Service Comm.* 46 Haw. 260, 377 P.2d 703 (1962).

A fortiori, there is no question that the legislature may limit the authority of the court or other reviewing bodies to vacate, amend or modify the original decision or order upon hearing of a matter upon appeal. Thus, we find no denial of due process.

### D.

Next, let us consider the Taxpayer's argument of denial of equal protection of the laws guarantee in connection with the interpretation of HRS § 232-3 (1968).

It appears that the legislature recognizing that in the evaluation of real property there will be inevitable differences of opinion and in the exercise of its wisdom enacted

the statute to restrict the authority of the review board and court to amend or modify the assessor's assessment. The restriction places a classification as to assessment which may be changed and which may not be changed in furtherance of this objective.

The general law is that one who assails the constitutionality of a classification must prove that it does not rest upon reasonable basis and that it is an invidious discrimination. *State v. Johnston*, 51 Haw. 195, 206, 456 P.2d 805 (1969). The Taxpayer's argument is that the statute on its face denies the Taxpayer its constitutional right to the equal protection of the laws. Nothing more has been offered and we cannot say that the classification is arbitrary and is not reasonably related to further the proclaimed legislative policy.

### E.

The Taxpayer next argues that though the present percentage used by the Assessor in calculating the assessment value of a taxpayer's property is 70 per cent, this rate is not fixed by statute; and therefore the Assessor has the authority to change the rate and thereby increase the margin of erroneous valuations. Accordingly, the Taxpayer by use of hypothesis argues that if the Assessor were to assess property at 10 per cent of the fair market value, overevaluation of 900 per cent would not entitle a taxpayer to have the assessment changed upon appeal and argues that it would be denial of due process or the equal protection of the laws.[12] If that were the facts before us the Taxpayer may have proven its point. But that is not the case before us. Here, the record shows that the Assessor assessed all of the parcels of land at 70 per cent of the fair market value.

---

[12]Isn't this similar to an argument which may be advanced by a defendant in a criminal case to have his confession which had been made voluntarily without coercion or force, nullified and set aside on the ground that if he had been compelled to make the confession by the use of force or threat, such confession would be in violation of his constitutional guarantee against self-incrimination and therefore void?

Thus, we find that the Taxpayer has not proven either denial of due process or the equal protection of the laws in violation of our constitutional provisions.

### F.

The Taxpayer argues that the word "assessment" as used in Section 232-3 refers to the 100 per cent fair market value of the property. Applying this interpretation *any* evaluation by the Assessor above the fair market value may be lowered under subsection (1). On the other hand, the Assessor claims that assessment refers to the assessed value of the real property represented by a percentage of the fair market value.[13] At the time the dispute arose, the percentage was fixed at 70 per cent. This approach precludes an evaluation from being lowered until the Assessor's determination of 70 per cent of the fair market value exceeds the true 100 per cent fair market value. As the Taxpayer points out unless one of the other three subsections can be used the net effect of such an approach would be to allow the Assessor about a 43 per cent margin of error before any erroneous assessment can be lowered by either the Tax Review Board, the Tax Appeal Court or this court.

Predicated upon the assumption that differences of opinion as to value the inevitable,[14] the Senate committee

----

[13]Using a percentage of fair market value for property tax purposes is allowed under RLH § 128-2 (1965 Supp.) *as amended*, HRS § 246-2 (1968). The section then concludes that:

"[N]o taxpayer shall be deemed aggrieved by an assessment nor shall an assessment be lowered except upon a ground stated in section [232-3]."

[14]The situation in this case supports the hypothesis of inevitable differences. The Assessor asserted one value. The Taxpayer had six different experts testify as to value with all six reaching a different conclusion:

Appraiser: A $17,226,111
B 19,000,000
C 17,457,051
D 17,500,287
E 17,000,000
F 20,400,000 or 20,689,000

The Tax Review Board reached yet another, and finally, the Tax Appeal

reports suggest the legislature designed Section 232-3 to limit adjustments by reviewing bodies.[15] While the section would not preclude all adjustments flowing from good faith differences of opinion between the Assessor and reviewing bodies, it would severely limit adjustments to the more *extreme* differences.

Interpreting "assessment" to mean the percentage of the fair market value used as a tax base under Section 246-2 (which is presently 70 per cent of the fair market value) would act to limit adjustments based on good faith differences. The Assessor would have to "overvalue" by such an extent that what he felt was 70 per cent value of the property exceeded the 100 per cent fair market value of the property as found by the reviewing body. Thus, under the statute, unless such an extreme over-evaluation were found or one of the other subsections were applicable, an assessment could not be lowered by *any* reviewing body.

The contrary interpretation of assessment offered by the Taxpayer would render the enactment of Section 232-3 unnecessary because immediately before the section was enacted, a reviewing body could lower an assessment upon the mere finding that its opinion as to value of the property differed from the Assessor's.[16] We cannot presume that the

---

Court came up with its own determination as to value. No doubt each one felt the others had either under-evaluated or over-evaluated the property.

[15]Standing Committee Report No. 60, Senate Journal at 478 (1957) reads:

"[I]t is contemplated that in line with the practice prevailing throughout the country assessment will continue to be made at a percentage of full market value, which presently is seventy per cent. This practice provides a cushion of margin which allows inevitable differences of opinion as to value."

Senate Conference Committee Report No. 17, regarding amendments to § 128-2 and § 129-2 reads:

"The tax rate limits fixed by H.D. 1 are adopted with additional provisions, set out in the amended sections 128-2 and 129-2 in sections 14 and 15 of the bill, that this tax rate limit is to be adjusted so that it will always be in the same ratio to the tax rate limit of $18.50 used in the bill, as 70% is to the percent of fair market value which the tax commissioner certifies that he has used. This provision takes cognizance of the authority of the tax commissioner, in making assessments, to provide a cushion or a

legislature intended to enact an unnecessary amendment.[17] *Levy v. Kimball*, 51 Haw. 540, 545, 465 P.2d 580 (1970); *In re Pringle*, 22 Haw. 557, 564 (1915). *Uptagrafft v. United States*, 315 F.2d 200, 204 (4th Cir. 1963); *Bergner v. State*, 144 Conn. 282, 130 A.2d 293 (1957); *Klopfenstein v. Rohlfing*, 356 Mich. 197, 96 N.W.2d 782 (1959); Black, *Interpretation of Laws* 524 (1911). Thus, the Taxpayer's position is untenable and we hold that assessment as used in Section 232-3(1) means the percentage of fair market value at which the Assessor values land under Section 246-2[18]

## G.

The Tax Assessor's original valuation and assessment of the property (70 per cent of fair market value) was

margin which allows for inevitable differences in opinion as to value, as explained in S.C.R. No. 60 of the Committee on Ways & Means, page 7. A conforming amendment is made in section 116.2.1, section 13 of the bill."

While such reports are not conclusive they may be referred to in order to ascertain legislative intent. Advertiser Publishing Co. v. Commissioner, 43 Haw. 154, 164 (1959); In re Pringle, 22 Haw. 557 (1915). *See generally,* United States v. O'Brien, 391 U.S. 367 (1968); E. Crawford, The Construction of Statutes §§ 216, 217 (1940).

Interestingly enough one of the taxpayer's own exhibits arrives at this same conclusion that assessment means a percentage of fair market value. A Survey Report of Real Property Assessment in Hawaii published by the Public Administration Service (1958) states at page 62:

"The grounds of appeal cited in [Section 232-3(1)] create an inconsistency in that an appeal apparently does not lie on the pure basis that an assessment exceeds the stated ratio of the assessed value to market value. This has the effect of permitting the Tax Commissioner (under the existing 70 per cent ratio) a latitude of 30 per cent in over-valuation."

[16]Before the amendment, this court did adhere to an evidentiary presumption that the assessment was correct. *See* In Re Taxes Ewa and Waialua, 47 Haw. 41, 51, 384 P.2d 287, 292 (1963). However, once the Tax Appeal Court makes its determination as to value, the assessment could be lowered no matter how minor the Assessor's "error."

[17]It should be noted that A Survey Report, mentioned in footnote 15, recommended at page 133 an amendment to delete this particular requirement for appeal. Thus, accepting the Taxpayer's contention would obtain the result recommended to be accomplished by an amendment to the statute.

[18]Often this percentage figure is also referred to as the "assessed value" of land.

$17,054,100. The Tax Appeal Court set the assessment (70 per cent fair market value) at $14,420,000. Even though the Tax Appeal Court's determination of value is lower than the Assessor's, before his assessment can be lowered the requirement of Section 232-3(1) must be met. From the Tax Appeal Court's assessment of subject property at $14,420,000, the full market value will be $20,600,000. Thus, though the Assessor's assessment of $17,054,100 is higher than the court's assessment, it is lower than the full market value of $20,600,000, as determined from the court's assessment and under Section 232-3(1), the Assessor's assessment could not and therefore should not have been lowered.

The Taxpayer may now argue that as we hold that the aggregate value was before the Tax Appeal Court rather than the component parts we should remand because the Tax Appeal Court's determination of the land value may alter the result. However, the Taxpayer in the notice of appeal alleged the valuation to be $14,204,000 compared to the Assessor's original valuation of $17,054,100. Now, adjusting this valuation of the Taxpayer to the full fair market value gives us $20,291,429 which is substantially above the assessment. Thus, the notice of appeal[19] on its face showed that the Taxpayer was not entitled to relief under HRS § 232-3(1) (1968).

Therefore, the original assessment of $17,054,100 could not and should not have been reduced.

### III.

Since we have decided that the assessment should not have been lowered, the Taxpayer is not entitled to a refund. Thus, the issue of the rate of interest payable on the refund

---

[19]The Taxpayer alleged the same amount of $14,204,000 as its valuation of the property both before the Tax Review Board and the Tax Appeal Court.

by the State under Act 13, SLH 1967, has become moot and therefore will not be considered.

Reversed.

*Tany S. Hong*, Deputy Attorney General (*Bertram T. Kanbara*, Attorney General, with him on the briefs) for appellant, cross-appellee.

*Tobias C. Tolzmann* for appellee, cross-appellant.

### DISSENTING OPINION OF LEVINSON, J., WITH WHOM MARUMOTO, J., JOINS

I dissent.

I agree with the majority opinion that the tax appeal court erred in failing to consider the valuation of the land as well as the building in the proceedings below. I also agree with the majority's statutory interpretation that assessment, within the meaning of HRS § 232-3(1), refers to the assessed value of the real property represented by a percentage of the fair market value. Nevertheless, based upon constitutional considerations I would reach a different result from the majority in this case.

The taxpayer contends that HRS § 232-3(1) violates the due process and equal protection guarantees of article I, section 4 of the Hawaii Constitution and section 1 of the fourteenth amendment to the United States Constitution because the statute (1) denies the taxpayer an opportunity to be heard on the amount of his assessment, and (2) capriciously forecloses appellate review of assessment valuations not in excess of 100 per cent fair market value of the assessed property. After a careful analysis of the procedures available for challenging the accuracy of real property tax assessments, I agree that the taxpayer has been denied the due process and equal protection of the laws. Therefore I would hold that HRS § 232-3(1) may not be used to bar the tax appeal court from lowering the appellee's assessment and I would remand the case for a reconsideration of the aggregate valuation of the taxpayer's property.

## I. DUE PROCESS OF LAW REQUIRES THAT THE TAXPAYER BE GIVEN AN OPPORTUNITY TO BE HEARD BEFORE THE MANDATE TO PAY THE TAX BECOMES FINAL.

The Supreme Court of the United States has long recognized that where the State levies a tax on property according to its value, due process of law requires that notice be given to the taxpayer of the proposed assessment and an opportunity afforded to him to test the validity of the tax at a time before it becomes final. *Hagar v. Reclamation District No. 108*, 111 U.S. 701, 710 (1884); *Hodge v. Muscatine County*, 196 U.S. 276, 281 (1905); *Nickey v. Mississippi*, 292 U.S. 393, 396 (1934). This is because the tax assessor, in estimating the value of property for purposes of taxation is engaged in a fact finding process. He must gather and weigh evidence in order to determine the value of the property in question. These facts uniquely concern the property of the individual taxpayer, and thus they are particularly appropriate for adjudication. For this reason the Supreme Court has recognized that due process requires a hearing to correct any errors which may have been committed by the tax assessor. *Hagar v. Reclamation District No. 108, supra.* The taxpayer argues that it has been denied this basic principle of legal justice and I agree.

HRS § 246-43 provides that the director of taxation shall give yearly notice to each property owner of the assessment which has been made against his property. Notice is to be furnished by personal delivery to the owner or by mail. In addition, the assessor in each district is instructed to give public notice of the assessments in his district. HRS § 246-43 states that the purpose of these notice requirements is to enable the taxpayer "to ascertain what assessments have been against him or his property and to confer with the assessor so that errors may be corrected before the filing of the assessment list." While this provision does satisfy the due process notice requirements, I do not believe that it secures constitutionally adequate hearing procedures.

As was noted above, assessment valuation facts are not general in nature but concern individual judgments. Thus, the tax assessor bases his opinion upon the accumulation of specific information about a given parcel of property. Such a process is always open to challenge on at least two grounds: (1) The data on which the expert rests his opinion may be shown to be incorrect; (2) The conclusions drawn from the facts may, in the opinion of men of equal skill, rest upon faulty grounds. 3A WIGMORE, EVIDENCE § 992 (Chadbourn rev. 1970). In this context I believe that rudimentary principles of due process require that a taxpayer be given an opportunity to offer his proof, to know the opposing proof and arguments and to examine relevant witnesses. *See Goldberg v. Kelly,* 397 U.S. 254, 267-68 (1970); *Hodge v. Muscatine County, supra* at 281-82; *Mortensen v. Employees Retirement System,* 52 Haw. 212, 220, 473 P.2d 866, 871 (1970). Only under such procedures will the taxpayer be assured of a just and reliable assessment. This trial type hearing is not available under the informal discussion provision of HRS § 246-43. It may be secured only through the appeal process of HRS ch. 232. Unfortunately this process is closed to those in the appellee's position.

HRS § 232-3 governs the grounds of appeal which may be raised by a taxpayer in a hearing before the tax review board or the tax appeal court. This provision provides in relevant part:

In the case of a real property tax appeal, no taxpayer or county shall be deemed aggrieved by an assessment, nor shall an assessment be lowered or an exemption allowed, unless there is shown:

(1) Assessment of the property in excess of its one hundred per cent fair market value. . . .

It is apparent from the above provision that unless a taxpayer alleges and proves that the assessed value of his property exceeds 100 per cent of its fair market value his assessment cannot be lowered. In other words, the taxpayer may come before the review board or the tax appeal court

and elicit overwhelming evidence to establish obvious over-valuations of his property; yet, unless the assessor's error is such that the assessed value exceeds 100 per cent of the property's fair market value, these reviewing bodies are powerless to grant him any relief. Clearly this is a denial of the due process of law.

The constitutional requirement that the taxpayer be given a hearing is meaningless if the very errors the hearing process is supposed to correct are shielded, by legislative fiat, from the remedial powers of the reviewing authorities. Due process of law is not served by telling the taxpayer that "we will listen to what you have to say but we are powerless to do anything about it." Such a provision is a mockery of the constitutional right to be heard. Therefore, I would hold that the limitation of HRS § 232-3(1) is invalid because it denies the taxpayer access to the only available forum for giving it a constitutional hearing on the validity of its assessment.

## II. HRS § 232-3(1) DENIES THE APPELLEE THE EQUAL PROTECTION OF THE LAWS.

The guarantee of the equal protection of the laws, found in both the Hawaii and Federal Constitutions, was not intended to interfere with the power of the State to classify its citizens for various purposes and treat some differently from others. *Rinaldi v. Yeager*, 384 U.S. 305, 309 (1966); *Hasegawa v. Maui Pineapple Co.*, 52 Haw. 327, 329, 475 P.2d 679, 681 (1970). Nevertheless the equal protection clause does mandate that government not exercise its classification powers arbitrarily; that is, when defining a class which is subject to legislation the distinctions drawn must be reasonable in relation to the purpose of the legislation. *Rinaldi v. Yeager, supra* at 309; *Allied Stores of Ohio, Inc. v. Bowers*, 358 U.S. 522, 527 (1959); *Hasegawa v. Maui Pineapple Co., supra*. In the present case the legislature has established forums for appellate review of tax assessments and has

chosen to exclude a designated class of taxpayers from access to these tribunals. Under the principles stated above such a bar is constitutional only if it bears a reasonable relation to the purpose of the legislation.

As the majority opinion points out, in enacting HRS § 232-3(1) the legislature desired to limit appellate review to those disagreements over assessment valuations which were not the result of "inevitable differences of opinion." To achieve this goal appeals were prohibited by HRS § 232-3(1) unless the assessed value exceeded 100 per cent of the fair market value of the assessed property. Currently this provision operates, in conjunction with the present tax base of 70 per cent, to prohibit all appeals protesting erroneous valuations unless the tax assessor has overvalued the taxpayer's property by 43 per cent. While I have serious doubts that an overvaluation of 43 per cent can rationally be classified as an inevitable difference of opinion the arbitrariness of HRS § 232-3(1) does not rest on this figure alone. In placing this restriction on taxpayer appeals I believe the legislature has violated the constitutional prohibition against irrational class distinctions because it has failed to place *any* limits on the margin of error which HRS § 232-3(1) may insulate from appellate review.

As previously noted, the present percentage used by the director of taxation in calculating the tax base or assessment value of a taxpayer's property is 70 per cent. This rate is not, however, fixed by statute. Instead, HRS § 246-2 authorizes the director of taxation to certify any percentage of fair market value which he chooses to utilize as a tax base. The statute also provides that, insofar as the validity of the tax base is concerned, the director's certificate is conclusive.

The effect of the tax director's power to alter the assessment rate is that the margin of erroneous valuations escaping appellate review varies directly with the discretionary fluctuation of the tax base. To illustrate, if the director of taxation sets the tax base at 50 per cent he can then value

property with a fair market value of $1000 at a valuation of $2000. This is an error of 100 per cent. Yet at a 50 per cent tax base the assessed value of the property is only $1000. Since this figure is not greater than 100 per cent of the fair market value of the property, the taxpayer is precluded by HRS § 232-3(1) from appealing the assessor's valuation of his property. Similarly, if the tax base is set at 10 per cent an overvaluation of 900 per cent would still leave the taxpayer without any appellate remedies under HRS § 232-3(1).

It is apparent from this analysis that the class of taxpayers excluded from the appellate process by HRS § 232-3(1) is not limited to those whose disagreements with the tax assessor arise merely from inevitable differences of opinion. Thus the class distinction drawn by the legislature does not bear a reasonable relation to the purpose of the legislation and the State has violated its constitutional duty to refrain from exercising its powers in an arbitrarily discriminatory manner. I would hold, therefore, that HRS § 232-3(1) violates the equal protection clauses of both the Hawaii and Federal Constitutions. The case should be remanded to the tax appeal court for a consideration of the aggregate valuation of the property.